EVERMAN CORPORATION, Appellant,

v.

HAWS & GARRETT GENERAL CONTRACTORS, INC., Appellee.

No. 18134.

Court of Civil Appeals of Texas, Fort Worth.

March 1, 1979.

Rehearing Denied March 29, 1979.

Shank, Irwin, Conant, Williamson & Grevelle, Thompson, Coe, Cousins & Irons, and Michael R. Knox, Dallas, for appellant.

Cantey, Hanger, Gooch, Munn & Collins and S. G. Johndroe, III, Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

Owner of a tower crane appeals from a judgment that it take nothing against a general contractor which was allegedly negligent in repairing and remodeling the crane. The owner alleges the trial court erred in disregarding favorable answers to three special issues because there is evidence to support them.

We reverse and remand.

Everman Corporation is in the business of manufacturing concrete products used in the construction of parking garages, schools, and commercial buildings. It owns a 100 foot tower crane which it operates at its plant to load pre-stressed concrete beams onto trucks for delivery. In 1973 the crane overturned. Everman wanted the crane repaired and remodeled to be able to lift more weight. It employed Kirk, Voich & Gist, a structural engineering firm, to provide specifications and drawings for the work. It engaged Haws & Garrett General Contractors, Inc., to do the work. Everman often engaged Haws & Garrett and as usual, there was no written contract containing their agreement. The exact details and nature of the agreement between Everman and Haws & Garrett are disputed. Everman claims Haws & Garrett agreed to supervise the repair, remodeling and erection of the crane. Haws & Garrett claims it only agreed to furnish some material and labor, particularly the services of Clyde Marquis. Marquis had been employed by Everman before he worked for Haws & Garrett and had operated the crane. Earl Haley, Everman's president, and Charles Haws, one of Haws & Garrett's principals, believed Marquis' experience would be helpful in working on the crane. Haws & Garrett claims it merely loaned him to Everman to work on the crane.

The crane was repaired, remodeled and erected. It was in operation four or five months when it collapsed again in March 1975. It was not lifting anything when it collapsed. In addition to the damage to the crane, which has never been repaired, there was damage to some concrete products when the crane fell on them. Everman brought this action against Haws & Garrett alleging that it was liable for Marquis' negligence under respondeat superior and that it was liable for its own failure to use ordinary care in supervising the work on the crane. In answering special issues the jury found that Marquis was negligent in cutting some notches in the crane's tension ring during erection and that this was a proximate cause of the damages found. However, the jury found that Marquis was a borrowed employee of Everman while working on the crane.

Everman admits that this finding bars recovery for Marquis' negligence, however, it claims the trial court erred in failing to render judgment for it against Haws & Garrett based on the jury's findings that Marquis was negligent because there is no evidence or insufficient evidence supporting the jury's finding that Marquis was a borrowed employee of Everman during the occurrence in question. More correctly stated, Everman claims that the jury's finding of borrowed employee is against the great weight and preponderance of the evidence. However, its point is an "insufficient evidence" point, as stated in its brief, in the sense that it asserts the insufficiency of the evidence to support the finding of borrowed

employee when the great preponderance of the evidence supports its non-existence. Calvert, *"No Evidence"* and *"Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361 (1960).

Supporting its contention Everman cites *Producers Chemical Company v. McKay*, 366 S.W.2d 220 (Tex.1963). There the supreme court states that where no contract expressly provides for the right of control of the details of the work of an employee by either of two employers, the *right of* control must be determined by the inferences drawn from facts such as the nature of the project, nature of the work performed by the employee, the length of the special employment, type of machinery used, and acts representing an exercise of control.

Applying this standard to the evidence in this case, we find that Haley testified that Cecil Smith, Everman's engineer and vice-president, had the authority to direct and control the restoration of the crane. Haley stated that it was a usual practice for Haws & Garrett to furnish Everman with workers and that when workers were furnished, Haley expected them to be under his direct control and supervision in performing the job they were asked to do. Further, Haley testified that if there had been a difference of opinion between Marquis and Smith over how a certain thing should be done, Marquis would be expected to follow Smith's direction and if Marquis would not follow it, he would have been removed.

We believe this evidence supports the jury's finding of borrowed employee. We find that this along with other evidence in the record is sufficient to sustain the finding. Therefore, the trial court did not err in failing to render judgment against Haws & Garrett based on the negligence of Marquis. Everman's points of error on this contention are overruled.

■ The jury also found that Haws & Garrett agreed to supervise the repair, erection and strengthening of the crane; that it failed to exercise ordinary care in its supervision; and that this was a proximate cause of the crane's fall. We note that the special issue on whether Marquis was a Haws & Garrett employee or a borrowed employee of Everman at the time in question was submitted disjunctively. It is our opinion that the better practice of submitting this issue would have been to inquire only whether Marquis was a Haws & Garrett employee while properly placing the burden of proof on Everman. Whether he was a borrowed servant in this context is merely inferential rebuttal and should not have been separately, or disjunctively submitted. The jury should have been informed of the borrowed servant doctrine by instruction. The problem is that if the special issue inquiring whether Haws & Garrett had agreed to supervise the work is construed to inquire whether Marquis had the duty to supervise on Haws & Garrett's behalf, an affirmative finding could conflict with the finding that Marquis was a borrowed employee of Everman because such a finding would mean that Everman had the right to control and supervise Marquis' work. One of the reasons for handling inferential rebuttals by instruction is to avoid such conflicts. Tex.R.Civ.P. 277. Also see Comment in 1 State Bar of Texas, Texas Pattern Jury Charges § 4.07 (1973 Supp.).

After the jury reached its verdict, Haws & Garrett moved for the trial court to disregard the answers to special issues nos. 7–9. These were the issues which inquired whether Haws & Garrett had agreed to supervise the work, failed to use due care, and proximate cause. The trial court granted the motion and disregarded these issues, all of which were answered favorably to Everman. Everman claims this was error because the answers were supported by the evidence. We agree.

■ Tex.R.Civ.P. 301 authorizes the trial court to disregard special issue jury findings which have *no* support in the evidence. The trial court found in its judgment that there was no evidence supporting the findings it disregarded. It is improper to do this if the record discloses any evidence of probative value which, with inferences which may be properly drawn therefrom, will reasonably support the same. *Morsch v. Metzger*, 520 S.W.2d 564 (Tex.

Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). It is improper even if the answers are against the great weight and preponderance of the evidence. *Interstate Circuit, Inc. v. Pine Forest Country Club*, 409 S.W.2d 922 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.). In reviewing whether there is any evidence supporting the verdict, we must view the record in the light most favorably to the verdict, and we consider only evidence of probative value which, with the inferences that may be properly drawn therefrom, supports the verdict. *Short v. Potts*, 473 S.W.2d 338 (Tex.Civ.App.—Tyler 1971, no writ). We do not consider evidence which does not support or which contradicts the verdict.

Special issue no. 7 is as follows:

"Do you find from a preponderance of the evidence that Haws & Garrett General Contractors, Inc., agreed with Everman Corporation to supervise the repair, erection and strengthening of the crane after its first fall?

"Answer 'We do' or 'We do not'.

"Answer: '*We do*'."

The record reflects that Haley testified that W. O. Neaves is the general superintendent for Haws & Garrett. Invoices, substantiating the bills submitted by Haws & Garrett and paid by Everman, reflect that Everman was billed for 26.5 regular hours and 6 overtime hours of Neaves' work. Haley also testified that Neaves received a higher hourly wage rate because of his supervisory status. He also indicated that Everman had paid these bills. Marquis testified that Neaves was his superior and that Neaves and Haws would come out to check the progress from time to time. Further, he testified that another Haws & Garrett supervisor, Jim Jones, came out to look at the crane. He stated that he did not know whether Jones inspected the crane or not. We believe that the jury could properly infer that Haws & Garrett had agreed to supervise the work on the crane by the presence of supervisory personnel at the job site, and from the fact that Everman was billed for Neaves' time at a supervisor's rate.

Smith testified that he did not supervise the Haws & Garrett employees working on the crane to the extent of what they did or the way they did their work. He characterized the status of Everman as the customer in the case. He noted that Haws & Garrett are general contractors and Everman is a specialist in the manufacture of concrete products. He recalled that in the past whenever Everman needed anything constructed it got Haws & Garrett to help. It is our opinion that this evidence raises an inference that Everman needed the supervision of Haws & Garrett, which along with other evidence, is probative of whether any such agreement existed.

When Haws & Garrett cross-examined Smith, he was asked to agree that Everman didn't really hire Haws & Garrett to repair the crane but merely got the services of Marquis. Smith stated he thought Everman had hired Haws & Garrett. This could raise the inference that when one is hired to do a job, the agreement to supervise the work is implicit in accepting the job.

We believe that taken together with the inferences therefrom, the evidence above supports the jury's finding that Haws & Garrett agreed to supervise the work on the crane. Therefore, the trial court erred in disregarding the jury's answer to special issue no. 7.

Special issue no. 8 is as follows:

"Do you find from a preponderance of the evidence that Haws & Garrett General Contractors, Inc., acting by and through its employees, failed to exercise ordinary care to supervise such repair, erection and strengthening of said crane?

"Answer 'We do' or 'We do not'.

"Answer: '*We do*'."

Kenneth Garrett, one of the principals of Haws & Garrett and a civil engineer, testified directly that from time to time he would send out his employees to Everman to assist Everman to do a particular job and that he would not supervise them while they were on an Everman job. There is ample other evidence in the record that Haws & Garrett failed to supervise the work on the crane. This is sufficient to support the jury's answer to special issue

no. 8. The trial court erred in disregarding it.

Special issue no. 9 is as follows:

"Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the fall of said crane on March 13, 1975?

"Answer 'We do' or 'We do not'.

"Answer: '*We do*'."

Don Kirk, a licensed structural engineer with Kirk, Voich & Gist testified that he had prepared the designs for the necessary repairs on the crane so as to increase its capacity. He testified that in his opinion the cutting of the notches in the crane's tension ring had impaired its structural integrity. The notches had introduced some stress concentrations which caused cracks at the notches and eventually ruptured the member. He stated that his design called for a full section channel and did not specify notches. He also testified that he would not have permitted the notches to be cut had he known about them. He was never consulted about the notches and stated that if proper supervision had been given, they would not have been cut. He also indicated that it would have been possible to restore some of the strength lost by the notching by reinforcing the area through welding some plates on it. We are of the opinion the evidence supports the jury's answer to this issue and the trial court improperly disregarded it.

■ Haws & Garrett by a cross-point of error contends that, even if there is some evidence supporting the findings disregarded by the trial court, the evidence is insufficient to support them. For the reasons stated above, Haws & Garrett's cross-point really contends that these findings are against the great weight and preponderance of the evidence. We agree and sustain this cross-point. The effect of the cross-point is that we must remand this case for a new trial. If Haws & Garrett had not perfected this cross-point, rendition of a judgment for Everman would have been proper. *Jackson v. Ewton*, 411 S.W.2d 715 (Tex.1967).

■ Because we must remand this case for a new trial appellee's other cross-points need not be discussed except to note that one of its cross-points of error asserts that the trial court erred in submitting a special issue because there is insufficient evidence to support it. As a general rule such points of error cannot be sustained. For discussion, see 1 State Bar of Texas, Texas Pattern Jury Charges at 24 (1969); *Strauss v. LaMark*, 366 S.W.2d 555 (Tex.1963). The trial court can properly submit an issue where there is any evidence more than a scintilla, which is probative in supporting the submission.

We have carefully considered the record in this case along with each point of error and cross-point of error presented in complaint of the trial court's judgment. Although not all points are discussed, each point has been severally considered and each not specifically ruled upon above is overruled. It is our opinion that there is reversible error in that the trial court improperly disregarded the jury's answers to special issues favorable to the appellant. Because we have sustained appellee's cross-point of error complaining that the findings disregarded are against the great weight and preponderance of the evidence, we reverse and remand this case for a new trial.

So ordered.