William C. KINDRED and Wife, Fay E. Kindred and Ernest J. Kurtz and Wife, Karen S. Kurtz, Appellants,

v.

CON/CHEM, INC., Appellee.

No. 1984cv.

Court of Appeals of Texas, Corpus Christi.

Sept. 23, 1982.
Rehearing Denied Oct. 21, 1982.

Michael B. Smithers, Cornelius, Powell, Perkins & Smithers, New Braunfels, for appellants.

R.D. Cullen, Cullen, Carsner, Seerden & Williams, Victoria, for appellee.

Before NYE, C.J., and BISSETT and YOUNG, JJ.

OPINION

YOUNG, Justice.

Appellants, William C. Kindred and Ernest J. Kurtz brought a products liability action against Con/Chem, Inc., the manufacturer of Cono Prime X, alleging that they had sustained personal injuries from the use of that product. Their petition alleged two defects: failure to adequately warn of the dangers of using the product and unreasonably dangerous design. The trial court submitted special issues on the failure to warn theory which the jury answered in the negative. Whereupon the trial court rendered a take nothing judgment. The refusal of the trial court to submit issues on the design defect theory is the basis for this appeal. We affirm.

The record shows that on April 28, 1977, the appellants were employees of the Spoetzl Brewery, who were performing maintenance work on beer storage tanks. They had completed the process of removing the old paint from the inside surface of a tank and had been applying Cono Prime X, a paint primer, to the inner walls of the tank for approximately twenty minutes, when a fire started. Because the tank is completely closed with the exception of a manhole at the bottom, the men had to pass through the fire to exit. They sustained injuries to their arms, legs, hands and faces, for which hospitalization was required.

The parties stipulated that Cono Prime X consists of 5% Ethanol, 90% isopropyl alcohol and 5% Silane. The appellants' expert, Dr. Morris Key, testified that the alcohol portion was merely the vehicle in which the effective ingredient Silane was carried. He reported his finding of a 53° Fahrenheit flash point for the substance and explained that in the presence of oxygen and a spark, the material would burn when warmed to approximately 53 degrees. The flash point is only one factor and Dr. Key said that a variety of other factors could have caused a fire at a higher or lower temperature and that his measurements were accurate within two or three degrees. Dr. Key stated that materials such as Xylol or even water

could have been used as solvents and would have rendered the mixture less flammable but more expensive. He testified that within an enclosed space such as a storage tank, Cono Prime X would be a very dangerous, very flammable mixture because inadequate ventilation would allow the vapors to concentrate. Instructing that the three factors necessary for a fire are air, fuel and an ignition source, Dr. Key stated that he could not identify the exact ignition source, nor could either of the appellants. The evidence showed that the temperature in the room which contained the tanks was about 48°F and that the temperature inside the tanks was a little warmer, perhaps 50°F.

■ Rule 279, T.R.C.P., provides that when a trial court submits a case upon special issues, the court shall submit the controlling issues made by the written pleadings and the evidence, when requested to do so in substantially correct form. The issues tendered by appellants for defective design were nearly identical to those approved by the Supreme Court in *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex. 1979)[1] except for an omission of a definition of "unreasonably dangerous." In a case where "unreasonably dangerous" was not defined but the issue of defective design was submitted to the jury, the court held that a definition was not necessary to enable the jury to properly consider and answer the special issue. *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93, 102 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.). Thus, we believe that the issues were tendered in substantially correct form.

■ The appellants' petition contained an allegation of defective design; therefore,

the only remaining requirement of Rule 279, which the appellants had to meet was to present evidence in support of the issues. If there is evidence to support the special issues, refusal by the trial court to submit such issues constitutes reversible error. *Southwestern Bell v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977). The trial court may decline to submit an issue, only if there is no evidence to support it. *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965). If the evidence offered amounts to more than a mere scintilla, the trial court must submit the issue. *Daniels v. Southwestern Transportation*, 621 S.W.2d 188, 191 (Tex.Civ.App.—Texarkana 1981, no writ); *Everman Corp. v. Haws & Garrett*, 578 S.W.2d 539, 544 (Tex.Civ.App.—Fort Worth 1979, no writ); *Trevino v. Trevino*, 555 S.W.2d 792, 801 (Tex.Civ.App.—Corpus Christi 1977, no writ).

■ As established in *Turner*, supra, the predicate for recovery in a defective design case is a showing that the product was defective, that the defect made the product unreasonably dangerous and that the defect was a producing cause of injuries. The appellants in this case presented expert testimony that Cono Prime X could have been made safer by the substitution of different solvents in its manufacture. The expert also referred to the product as dangerous.

■ To prove that there is a defect in design which is unreasonably dangerous, a plaintiff must show that the likelihood and gravity of injury from its use exceeds its utility. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 746 (Tex.1980). In making their decision, the jury may consider evidence of the economic and scientific feasibility of alternative designs, the usefulness and desirability of the product, the ability

1. The special issue on defective design in *Turner* was as follows:
"Special Issue No. 1
Do you find from a preponderance of the evidence that at the time the automobile in question was manufactured by General Motors the roof structure was defectively designed?
By the term 'defectively designed' as used in this issue is meant a design that is unreasonably dangerous.

'Unreasonably dangerous' means dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."
A separate issue inquired as to whether the defect was the producing cause of the injuries. *Turner*, supra at 846.

to eliminate the risk without seriously increasing the product's usefulness or cost. *Id.* While it was not necessary to introduce evidence on each of these factors, evidence must be presented on some of them to enable the jury to make an intelligent determination. The appellants failed to present any evidence on any of the criteria of defective design except for the bare statement of Dr. Key that a safer design was possible. Without evidence of the feasibility of such alternatives, this information is of little value. Thus, the proof offered in support of the design defect issues does not amount to more than a scintilla. Further, there is no evidence in the record on the issue of producing cause. The appellants' point of error is overruled.

The judgment of the trial court is affirmed.