James Garland CARTER,
Plaintiff-Appellee,

v.

MASSEY–FERGUSON, INC.,
Defendant-Appellant.

No. 82–2287.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1983.

Rehearing Denied Oct. 28, 1983.

Victor Hlavinka, Texarkana, Tex., Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Dallas, Tex., for defendant-appellant.

Scott Baldwin, Carl Roth, Marshall, Tex., for plaintiff-appellee.

Before WISDOM, TATE and GARWOOD, Circuit Judges.

WISDOM, Circuit Judge:

In this products liability case, controlled under *Erie* by the law of Texas, Massey-Ferguson, Inc., appeals from a jury verdict awarding damages to James Garland Carter for personal injuries that he sustained when a motorized log-moving device, called a skidder, allegedly backed into him. Massey-Ferguson contends that the trial judge committed a prejudicial error by refusing to admit evidence of the industry custom with regard to installation of a back-up alarm. Massey-Ferguson also contests the competency of the plaintiff's expert witness to give an opinion on causation that is based solely on other testimony presented at trial. Massey-Ferguson contends that without this testimony Carter has not established

the requisite causal relationship between his injuries and the alleged defect. *See Turner v. General Motors Corp.,* Tex.1979, 584 S.W.2d 844. We hold that the trial judge's refusal to admit evidence of the industry custom is harmless error. Further, we conclude that the expert's opinion testimony is admissible under the federal rules of evidence. *See* Fed.R.Evid. 703. Alternatively, excluding the expert testimony, we find that sufficient evidence was presented at trial for the jury to infer that the absence of a back-up alarm on the skidder caused the accident that resulted in Carter's injury. We AFFIRM.

## I.

James Garland Carter was a woodcutter. On November 6, 1980, the day of the accident, he was chopping down trees that later were to be picked up and moved to an area where they could be loaded onto a truck and transported to a lumber yard. The logs were moved to the loading point by a large motorized machine called a skidder. The skidder, manufactured by Massey-Ferguson, was not equipped with a back-up alarm. Carter alleged, and the jury found, that the driver of the skidder accidently backed into him while he was working close to the ground. Although he could hear the skidder and knew it was near the area where he was working, he did not realize it was backing up at the time he was hit. The driver's visibility to the rear is restricted when he is driving the skidder in dense underbrush, and he could not see Carter. After the accident, the driver found Carter lying on the ground and went for assistance. As a result of the accident, Carter is a paraplegic.

■ Carter filed suit against Massey-Ferguson, asking that it be held strictly liable for his injuries because of an alleged design defect in the skidder.[1] The skidder was not equipped with an automatic sound alarm that would warn nearby workers when the skidder reversed.[2] The trial judge granted Carter's preliminary motion to exclude evidence of industry custom because neither the feasibility of the alarm nor its availability on the market at the time of manufacture was at issue.[3] On appeal, Massey-Ferguson contends that evidence of the industry custom that would have shown that no manufacturer equips skidders with back-up alarms is relevant to the issue of design defect.

At trial, the facts were hotly disputed.[4] Massey-Ferguson alleged that Carter was injured when a tree fell on him, and that he was not hit by the skidder as he asserted. After hearing the evidence, the jury concluded that Carter was injured when the skidder backed into him.[5] To reach that conclusion the jury necessarily had to determine that the skidder was defective in that it did not have a back-up alarm and that this defect was the cause of Carter's injuries. On appeal, Massey-Ferguson turns its attention to the elements of strict liability, alleging that industry custom is relevant to a finding of defective design and that causation cannot be established by an expert's

---

1. "Defective" is a term of art that encompasses several actionable defects. A product can be defective because it is flawed. Flawed products are not in their intended condition because of an error in the manufacturing process. Although the condition of a product complies with the manufacturer's intention, it can still be "defective" if the design is not sufficiently safe or if the product does not have adequate instructions or warnings. Wade, *On Product "Design Defects" and Their Actionability,* 33 Vand.L.Rev. 551 (1980); L. Frumer & M. Friedman, 2 Products Liability § 16A[4][f].

2. The plaintiff did not allege that Massey-Ferguson was negligent for failing to provide a back-up alarm. Rather, he contended that the product was defective because it did not have a backup alarm.

3. The evidence showed that many types of heavy equipment have back-up alarms, and that the cost to equip the skidder with an alarm would be about $40. *Cf. Boatland of Houston, Inc. v. Bailey,* Tex.1980, 609 S.W.2d 743.

4. At trial, there was considerably less dispute over the legal elements of strict liability than over the events leading to the injury.

5. We must accept the jury's determination that Carter's version of the facts is the correct one.

opinion testimony if it is based solely on testimony adduced at trial.

## II.

■ To vacate the jury's verdict in this case we must find that evidence of industry custom is relevant in a strict liability case and that the trial judge's decision to exclude it was prejudicial to the defendant. Under federal rules of evidence, all relevant evidence is admissible, unless there are sound reasons to exclude it. Fed.R.Evid. 402. Although this case is based on diversity jurisdiction, federal rules of evidence apply. *Hanna v. Plumer,* 1965, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8; *see also* C. Wright, Law of Federal Courts § 93 at 620–27 (4th ed. 1983). Thus, we begin with the premise that this evidence, if relevant, is admissible.

■ Evidence is relevant if it relates to any fact that is "of consequence" to the action. Fed.R.Evid. 401. To determine relevancy in a diversity case we must look to the underlying state substantive law. The Texas Supreme Court imposes strict liability on manufacturers for injuries caused by design defects. *Otis Elevator Co. v. Wood,* Tex.1968, 436 S.W.2d 324. The plaintiff in a strict liability case based upon a design defect must show that a defect exists, that the defect makes the product unreasonably dangerous, and that the defect is a producing cause of the injury. *Turner v. General Motors Corp.,* Tex.1979, 584 S.W.2d 844; *Kindred v. Con/Chem, Inc.,* Tex.Civ.App. 1982, 644 S.W.2d 828; *see* Restatement (Second) of Torts § 402A (1965).

■ A manufacturer is not obligated to design a completely safe product. A product is not "unreasonably dangerous" merely because it could have been designed with greater safety. *Simien v. S.S. Kresge Co.,* 5 Cir.1978, 566 F.2d 551. Two tests have been developed to determine whether a defect is unreasonably dangerous. Under the first test, a product is unreasonably

dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community". Restatement (Second) of Torts § 402A, comment i (1965). Courts using this test admit evidence of industry custom because it is relevant to an ordinary consumer's expectations. *Two Rivers Co. v. Curtiss Breeding Service,* 5 Cir.1980, 624 F.2d 1242, 1249. In design defect cases, the Texas Supreme Court has adopted the second test, Dean Page Keeton's formulation of the unreasonably dangerous standard. *Turner v. General Motors Corp.,* Tex. 1979, 584 S.W.2d 844; Keeton, *Annual Survey of Texas Law—Torts,* 34 Sw.L.J. 1, 7–9 (1980); Keeton, *Product Liability and the Meaning of Defect,* 5 St. Mary's L.J. 30 (1973). Under this formulation, a product is unreasonably dangerous and defective, if the danger-in-fact associated with the use of the product outweighs the utility of the product. *Turner v. General Motors Corp.,* Tex.1979, 584 S.W.2d at 851; *see also* Note, *Turner v. General Motors Corporation: Crashworthiness in Texas,* 31 Baylor L.Rev. 375 (1979). Because this case involves an allegation of a design defect, that is, the absence of a back-up alarm, the risk-utility formulation applies.

The issue before this court is whether evidence of an industry custom that skidders are not equipped with back-up alarms is relevant to the determination of either risk or utility. The Texas Supreme Court has not decided this issue. In *Boatland of Houston, Inc. v. Bailey,* Tex.1980, 609 S.W.2d 743, the supreme court held that "state of the art" evidence is admissible in a strict liability case. This type of evidence, however, is distinguishable from evidence of the industry custom, here at issue. "Custom" refers to the usual practice of the manufacturer, that is, what *is* done; "state of the art" refers to the technological environment, that is, what *can* be done.[6] *See*

6. Although industry custom evidence has been equated erroneously with state of the art evidence, the Texas Supreme Court has differentiated between the two types of evidence. "The

state of the art with respect to a particular product refers to the technological environment at the time of manufacture. This technological environment includes the scientific knowledge,

*id.* at 748; *see also* Note, *Use of the "State of the Art" Evidence in Strict Liability Claims: The New Texas Standard,* 33 Baylor L.Rev. 165 (1981). Because the Texas Supreme Court has not decided the issue raised in this appeal, we must determine what the Texas Supreme Court would hold on the relevancy and admissibility of custom evidence in a design defect case if the issue were before it. *Green v. Amerada-Hess Corp.,* 5 Cir.1980, 612 F.2d 212, 214, *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216.

Under Texas jurisprudence, evidence of industry custom is relevant to the proof of negligence by a manufacturer because the reasonableness of the manufacturer's conduct is at issue. *Weakley v. Fischbach & Moore, Inc.,* 5 Cir.1975, 515 F.2d 1260, 1267 (applying Texas law). In a strict liability case, however, the reasonableness of the manufacturer's conduct is not at issue; the manufacturer may be held liable even though he has exercised the utmost care. Restatement (Second) of Torts § 402A, comment a (1965). Thus, the argument is made that industry custom is not relevant in a strict liability case. *See, e.g., Bruce v. Martin-Marietta Corp.,* 10 Cir. 1976, 544 F.2d 442, 447 (dictum). *But see Wisconsin Electric Power Co. v. Zallea Bros.,* 7th Cir.1979, 606 F.2d 697, holding that evidence of industry custom is admissible at the discretion of the trial judge. This argument, however, goes too far: evidence need not be dispositive of an issue to be relevant. Fed.R.Evid. 401 advisory committee note. Industry custom is relevant in a strict liability case if it has any bearing on the condition of the product, which is the focus of a strict liability case. *Boatland of Houston, Inc. v. Bailey,* Tex.1980, 609 S.W.2d 743, 749.

The Texas Supreme Court has rejected the use of specific, enumerated guidelines in the jury instruction on the standard of unreasonable dangerousness. *Turner v. General Motors Corp.,* Tex.1979, 584 S.W.2d 844, 847. The supreme court,

however, has suggested that evidence of certain factors would be useful to the factfinder in the risk-utility balance. These factors include the availability of substitute products, the manufacturer's ability to eliminate some of the risk associated with the product without adversely affecting the usefulness or cost of the product, and the expectations of the ordinary consumer. *Id.* at 846–47; *see also Kindred v. Con/Chem Inc.,* Tex.Civ.App.1982, 644 S.W.2d 828, 830–31. Courts applying the "ordinary consumer" test to determine whether a product is unreasonably dangerous admit evidence of industry custom because it is relevant to an ordinary user's expectations. *See Two Rivers Co. v. Curtiss Breeding Service,* 5 Cir.1980, 624 F.2d 1242, 1249, applying Texas law to a "flaw case". Although the Texas Supreme Court has rejected the use of the ordinary consumer test in design defect cases, it has intimated that evidence of the consumer's expectations is relevant to the risk-utility determination. *Turner v. General Motors Corp.,* Tex.1979, 584 S.W.2d 844, 847. We conclude, therefore, that in a design defect case the Texas Supreme Court would find that evidence of industry custom is relevant to the ordinary user's expectations, although this factor may play a small role in the overall balance of risk and utility.

Our conclusion garners additional support from Dean Keeton, the foremost authority on Texas tort law. Dean Keeton proposed the risk-utility formulation of the unreasonably dangerous component of strict liability that was adopted by the Texas Supreme Court in *Turner.* Keeton, *Product Liability and the Meaning of Defect,* 5 St. Mary's L.J. 30 (1973). We conclude that his opinion on the relevancy of certain types of evidence would be considered by the Texas Supreme Court if it were confronted with this issue. Dean Keeton states that evidence of industry custom is relevant in a strict liability case because it relates to the industry's perception of the danger associated with the use of the prod-

---

economic feasibility, and the practicalities of implementation when the product was manu-

factured." *Boatland of Houston, Inc. v. Bailey,* Tex.1980, 609 S.W.2d 743, 748.

uct. Keeton, *Annual Survey of Texas Law—Torts,* 35 Sw.L.J. 1, 11 (1982). Thus it has some bearing on the risk-utility formulation. As Dean Keeton points out, however, custom evidence is not dispositive of the danger-in-fact issue. *Id.* This test is an objective one: it does not depend upon the subjective perceptions of the industry. In addition, the industry custom might reflect considerations of costs, profits, or marketing strategies, rather than product safety. J. Beasley, Products Liability and the Unreasonably Dangerous Requirement 393 (1981). *See also Ward v. Hobart Manufacturing Co.,* 5 Cir.1971, 450 F.2d 1176, 1184 noting that safety is not the only factor considered by a manufacturer in designing a product. Despite the limitations of the industry custom evidence, Dean Keeton would admit it and would place the burden on the advocates to explain its narrow function in a strict product liability case.[7] Keeton, *Annual Survey of Texas Law—Torts,* 35 Sw.L.J. 1, 11 (1981). Although we find that evidence of industry custom is relevant in a strict liability case, in the light of the limitations imposed on its effect and Dean Keeton's comment on its unreliability in a design defect case, we conclude that it has a low probative value when, as here, neither the feasibility of an alternative design nor the foreseeability of harm is at issue.[8] *See* Keeton, *Annual Survey of Texas Law—Torts,* 35 Sw.L.J. 1, 11 (1981).

To vacate a judgment this court must find that the substantial rights of the parties were affected. Fed.R.Civ.Proc. 61. We do not find that the trial judge's decision to exclude evidence of industry custom affected the rights of the parties in this case. The evidence has low probative value, and presents the possibility of jury confusion by introducing a negligence concept into a strict liability case. *See Holloway v. J.B. Systems, Ltd.,* 3 Cir.1979, 609 F.2d 1069, 1073. In addition, evidence of industry *standards* was admitted; this type of evidence would serve the same function as evidence of industry custom. Finally, the principal dispute at trial was whether the skidder struck the victim at all. As counsel for both sides admitted, this case turned on the credibility of the witnesses. The jury accepted the plaintiff's version of the facts. We do not find that its verdict would have been different if the trial judge had admitted the evidence of industry custom. Because the rights of the parties were not affected by the trial judge's decision to exclude the evidence, the decision was harmless error.

### III.

Massey-Ferguson raises a second evidentiary objection. It contends that Carter's expert witness was not competent to give an opinion on causation based solely on the testimony presented at trial. The expert witness could not reconstruct the scene of the accident because the landscape had been materially altered between the time of the accident and the time he was taken to the scene. Massey-Ferguson, therefore, contends that his testimony that Carter could have avoided the accident if the skidder had been equipped with an alarm is inadmissible because he did not have personal knowledge of the scene of the accident. *See* Fed.R. Evid. 602.

The defendant's reliance on rule 602 is misplaced. By its terms, rule 602, lack of personal knowledge, is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.[9] *See* J.

---

7. Evidence of industry custom has the potential to lead to jury confusion because it could cause the jury to focus on the manufacturer's conduct, rather than the condition of the product. To avoid this problem, the trial judge should give a limiting instruction to the jury. Note, *Turner v. General Motors Corporation: Crashworthiness in Texas,* 31 Baylor L.Rev. 375, 387 (1979).

8. The parties agreed that the state of technology at the time the skidder was made permitted a design with a back-up alarm. The evidence also showed that it was foreseeable that the skidder would be operated in the vicinity of ground workers, though the guidelines for operation of the skidder advised against it.

9. Rule 602. Lack of Personal Knowledge states in part:

Weinstein & M. Berger, 3 Weinstein's Evidence ¶ 602[01]. Rule 703 provides that an expert may base his opinion testimony on facts or data presented at trial.[10] *See id.* at ¶ 703[01]. The plaintiff's expert based his testimony on the plaintiff's account of the accident, that is, that the skidder backed into him. He disclosed the underlying basis of his testimony. *See* Fed.R.Evid. 705. Based on this disclosure, the jury could decide how much weight to accord the opinion testimony. We find that the trial judge did not err in admitting the expert's opinion testimony.

■ Even excluding the expert opinion testimony, sufficient evidence was presented for the jury to infer that the absence of a back-up alarm caused the plaintiff's injuries.[11] The jury heard Carter's account of the accident that he did not see the skidder backing toward him, allowing it to infer that had he been alerted by an alarm he could have moved away and avoided the injury. The testimony also showed that other types of industrial equipment had back-up alarms to warn the ground workers that the machine was being operated in reverse. This evidence was sufficient to allow the jury to find that the absence of a back-up alarm caused Carter's injuries.

The judgment of the trial court is AFFIRMED.

GARWOOD, Circuit Judge, concurring:

I concur in Judge Wisdom's persuasive and scholarly opinion for the Court. I append these further comments merely to reflect my understanding that we do not hold the erroneous exclusion of evidence of a challenged design's conformance to industry custom in a Texas law strict liability products action is normally harmless, but rather

that such erroneous exclusion was harmless under the particular facts of this case, especially since the real contest at trial was whether the skidder struck the victim and since *standards* evidence was admitted. As Judge Wisdom indicates, evidence that a product's design conforms to or deviates from industry custom, though not dispositive, may nevertheless be relevant in determining whether the product is unreasonably dangerous under the risk-utility balancing test. That potential relevance may be twofold. First, industry custom will usually tend to show the collective judgment of the industry on the subject, and in this respect it has the same character of relevance as a professional society *standard,* though the relevance is more attenuated since factors other than product safety are more likely to influence the custom than the standard. Second, it will in many instances, though by no means all, tend to show general user experience with and expectations of product handling or performance in respect to the design characteristics at issue; and frequently the extent of the risk *actually* posed by a given product design characteristic will be affected by the degree to which it causes the product's operation and performance to conform to general user experience and expectations. Whether in a given case industry custom is relevant under either of the above theories, and if so the degree of its probative value, will naturally depend, among other things, on the nature of the product, the particular design characteristics at issue and the industry custom. However, it is not difficult to imagine cases where the probative value may be substantial and, depending on the trial posture, where exclusion of evidence of such custom may not only be error but also reversible

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter .... This rule is *subject to the provisions of rule 703,* relating to opinion testimony by expert witnesses.
(Emphasis added).

10. Rule 703. Bases of Opinion Testimony by Experts states in part:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him *at* or before *the hearing....*
(Emphasis added).

11. The plaintiff's burden of proof can be met by showing sufficient facts to allow the jury to infer that the defect caused the injury. L. Frumer & M. Friedman, 2 Products Liability § 16A[4][e][ii].

error. I join my distinguished colleagues in their determination that reversible error is not presented by this record.