IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-10199
Summary Calendar
_____


HELEN I. SMITH,

                                           Plaintiff-Appellant,

                        versus

WILLIAM S. COHEN,
U.S. Secretary of Defense,

                                           Defendant-Appellee.
_____

Appeal from the United States District Court for the
Northern District of Texas, Dallas
USDC No. 3:98-CV-0429-AH
_____
January 3, 2001

Before JOLLY, SMITH, and DeMOSS Circuit Judges.

PER CURIAM:[*]

     This is a Title VII employment discrimination action filed by

Helen Smith, an employee of the Army and Air Force Exchange Service

("AAFES").  The magistrate judge granted summary judgment for AAFES

on three of Smith's four retaliation claims.  The fourth

retaliation claim was argued before a jury, which returned a

verdict in favor of AAFES.  On appeal, Smith contends that the

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

trial court erred in granting summary judgment on her claim that she was denied a desk audit and given a lowered performance evaluation report.  Smith also contends that the trial court erred in regard to three evidentiary rulings during the trial.  Having concluded that the trial court committed no reversible error, we affirm the partial summary judgment and the jury's verdict.

I

Helen Smith was an accounting technician with the Army and Air Force Exchange Service ("AAFES"), a store that provides goods and services to Army and Air Force personnel.  Beginning in 1992, Smith's primary responsibility was to perform accounting functions for "The Club," a dining facility at the AAFES's headquarters in Dallas, Texas.  The Club was operated jointly by AAFES and the Air Force Services Agency, and the AAFES had agreed to provide a manager and accountant for the Club.

Between 1990 and 1996, Smith filed numerous EEO complaints against her supervisors, argued with her supervisors about her duties as accounting technician for the Club, and was accused of filing late and inaccurate financial reports.

In 1996 and 1997, the Club was in the process of being converted to an Air Force Club.  In January 1997, Smith's supervisor informed her that Bea Crider, the chief accountant for the Air Force Services Agency, would be coming to Dallas to teach Smith about the Air Force Services Agency's accounting system.  A problem arose because Smith had always used commercial accounting

software called "DAC-Easy" to perform the accounting functions, but the Club decided to switch to UNIX software that the Air Force Services Agency had used for many years. Smith informed her supervisor that she did not want to be trained by Ms. Crider.

When Crider arrived on January 21, 1997, she was asked to provide software training to Smith and to assist her in producing the Club's financial report for the final quarter of 1996. Crider informed Smith's supervisor that Smith had not been fully cooperative during the training session. On January 22, Smith and her immediate supervisor quarreled over how long it would take to produce the quarterly financial report. Smith then requested a meeting with Colonel Campbell, the director of administration at the AAFES. In the presence of several AAFES officials, Colonel Campbell issued what he called a "very stern counseling" to Smith.

The parties disagree about what happened immediately after the meeting with Colonel Campbell. Smith alleges that she was given no further instructions with regard to the Club's quarterly financial statement. Smith's supervisor, however, claims that he personally requested that Smith provide him with the raw financial data from the fourth quarter of 1996. Crider testified that Smith gave the raw data to her shortly after lunch. Smith's supervisor testified that he asked Smith about the financial information later that afternoon; that she ignored his requests and walked away; that he sent an e-mail reporting Smith's "gross insubordination" to Colonel Campbell, the human resources manager, and others; and that Smith

3

finally provided the information to him shortly after he sent the e-mail. Smith's supervisor contacted Colonel Campbell again and requested that "personnel action" be taken immediately.

In February 1997, Colonel Campbell informed Smith that she would be suspended from work for three days because of her actions on January 22. Smith served her suspension from March 10 to March 12, 1997. In May 1997, Smith received her annual performance evaluation. Although she received a "satisfactory" rating, her supervisor noted that he found Smith difficult to work with, and Colonel Campbell said that she was the "most sullen and uncooperative" employee he had known.

II

In February 1998, Smith filed a complaint in the United States District Court, alleging that the AAFES had violated Title VII of the Civil Rights Act of 1964. The complaint contained numerous allegations of illegal discrimination on the bases of sex and age, as well as allegations of unlawful retaliation. With the consent of the parties, the case was assigned to a magistrate judge.

In January 1999, AAFES filed a motion for summary judgment. In her response to the motion for summary judgment, Smith withdrew her claims based on sex and age discrimination. The magistrate judge considered Smith's claims that she was the target of illegal retaliation when (1) she was denied a desk audit and not given a

4

correct job description in 1996; (2) she was suspended without pay from March 10 to March 12, 1997; (3) she was forced from her position as account technician in May 1997; and (4) her performance evaluation report was lowered in June 1997. In August 1999, the magistrate judge granted AAFES's motion for summary judgment on all the claims except the one related to the March 1997 suspension. The magistrate judge concluded that the other three claims did not constitute ultimate or adverse employment actions under the law of the Fifth Circuit.

The parties consented to a jury trial before the magistrate judge. The sole issue was whether Smith had been suspended without pay for three days in March 1997 in retaliation for her prior EEO filings.

The magistrate judge made three significant evidentiary rulings. First, at a pretrial conference, the magistrate judge granted AAFES's motion in limine preventing Smith from mentioning in the jury's presence the substance of any of her eight prior EEO complaints. Second, during the trial, the magistrate judge excluded Smith's prior performance evaluation reports. Third, at the commencement of the trial, the magistrate judge did not allow tape recordings of certain conversations to be sent to the jury room because (1) the transcripts had been previously excluded, and (2) neither party had played the tapes during trial.

The jury returned a verdict in favor of AAFES, and this appeal followed.

III

Smith raises four issues on appeal. The first issue concerns the magistrate judge's partial grant of summary judgment in favor of AAFES. Smith contends that the court erred in holding that the denial of a desk audit and a poor performance evaluation were not adverse employment actions under Title VII. The second, third, and fourth issues concern the magistrate judge's evidentiary rulings at trial. Smith contends that the district court erred in (1) preventing Smith from offering evidence about the prior EEO complaints, (2) excluding Smith's prior performance evaluation reports, and (3) not allowing the tape recordings to be sent to the jury during deliberations. We consider these four issues in turn.

A

First, we consider the magistrate judge's grant of summary judgment on Smith's three retaliation claims.

Summary judgment is appropriate only if the record discloses "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. When a district court has granted a motion for summary judgment, we review the question de novo, applying the same substantive test set forth in Rule 56. Horton v. City of Houston, 179 F.3d 188, 191 (5th Cir. 1999).

In order to make a prima facie case of retaliation, Smith needed to prove that (1) she had engaged in activity protected by Title VII, (2) she suffered an adverse employment action, and (3)

6

there is a causal connection between the participation in the protected activity and the adverse employment action.  See, e.g., Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996).

The issue in this case is whether the two employment actions--a lowered performance evaluation and the denial of a desk audit--constitute adverse employment actions under Title VII.  This court has explained that Title VII was designed to address only "ultimate employment decisions," such as hiring, discharging, promoting, and compensating employees.  Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995).  It is clear that negative performance evaluations and the denial of a desk audit do not qualify as ultimate employment actions.  See Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997) (stating that "disciplinary filings and supervisor's reprimands," for examples, are not ultimate employment actions even though these actions might jeopardize employment in the future); Dollis, 77 F.3d at 782 ("[T]he denial of a desk audit is not the type of ultimate employment decision that Title VII was intended to address.").  The decisions in Dollis and Mattern are binding, and we have no authority to reconsider this circuit's definition of adverse employment actions.

B

The second issue is whether the magistrate judge committed reversible error when he granted AAFES's motion in limine and thus prevented Smith from offering evidence about the prior EEO complaints.

7

This court shows considerable deference to the district court's evidentiary rulings.

> We review the district court's evidentiary rulings for abuse of discretion. Johnson v. Ford Motor Co., 988 F.2d 573, 578 (5th Cir.1993). Under Federal Rule of Civil Procedure 61, we may not set aside a verdict based on an error in the exclusion of evidence, 'unless refusal to take such action appears to the court inconsistent with substantial justice.' FED. R. CIV. P. 61. To vacate a judgment based on such an error, we 'must find that the substantial rights of the parties were affected.' Carter v. Massey-Ferguson, Inc., 716 F.2d 344, 349 (5th Cir. 1983).

Smith v. Isuzu Motors Ltd., 137 F.3d 859, 863 (5th Cir. 1998). Furthermore, the "burden of proving substantial prejudice lies with the party asserting error." McDonald v. Steward, 132 F.3d 225, 232 (5th Cir. 1998).

Smith filed eight previous EEO complaints between 1990 and 1996. Because the existence of these prior filings was essential to Smith's retaliation claim, Smith was allowed to testify that she had filed these complaints. But the district court decided not to allow Smith to testify about the nature and substance of these complaints. In its motion in limine, AAFES argued that (1) the prior EEO complaints had not involved the supervisors who were responsible for suspending her in March 1997; and (2) detailed consideration of the prior complaints would be prejudicial, unnecessary, and wasteful. At a pretrial conference, the magistrate judge granted AAFES's motion in limine. On appeal, Smith argues that the details of the prior EEO complaints were

necessary to establish the "issue of intent, and a pattern and practice" of discriminatory treatment.

We conclude that the magistrate judge could have reasonably concluded that the details of these prior acts were irrelevant, confusing, dilatory, or prejudicial under Federal Rules of Evidence 401 and 403. It is not disputed that all prior complaints had been adjudicated and (with one limited exception) either dismissed on the merits after an administrative hearing or dismissed as a matter of law prior to the trial in January 2000. Further, it is not disputed that the previous eight complaints involved different supervisors from those who suspended her for three days in March 1997, which, of course, was the sole subject of the trial below. In the light of these considerations, we cannot say that the district court abused its discretion. Smith's second issue is thus without merit.

C

The third issue is whether the magistrate judge committed reversible error by excluding Smith's prior performance evaluation reports.

At trial, the magistrate judge admitted into evidence Smith's performance evaluation report ("PER") prepared by Smith's immediate supervisor and Colonel Campbell, the officials who authorized her suspension in March 1997. However, the judge excluded Smith's prior PERs from 1985 to early 1996. Smith claims that her "long history of glowing reviews" suggests that her supervisors in 1997

9

must have had an improper motive in suspending her. The magistrate judge disagreed, concluding that the prior PERs were irrelevant to the issue at trial. Smith has not demonstrated why the exclusion of these written evaluations, which were prepared long before her suspension and by supervisors who were not involved in the decision to suspend her, is relevant to the question whether Smith was suspended in March 1997 in retaliation for filing EEO complaints. Moreover, the magistrate judge still allowed Smith to testify on two occasions that she had previously been rated "superior" by her former supervisors. In the light of these considerations, we cannot say that the trial court abused its discretion or that Smith's substantial rights were affected by the trial court's decision to exclude these written PERs. Smith's third issue is thus without merit.

D

The fourth issue is whether the magistrate judge committed reversible error by not allowing the tape recordings to be sent to the jury during deliberations.

In late 1996 and early 1997, Smith secretly recorded four conversations with her immediate supervisor. She then prepared transcripts of these taped conversations. Prior to trial, AAFES listed the tapes as exhibits, and Smith listed both the tapes and transcripts as exhibits. AAFES objected to the transcripts,

10

claiming that they had not been accurately transcribed. The magistrate judge excluded all but one of the transcripts. Although the tapes were pre-admitted into evidence, neither party played the tapes at trial. Nevertheless, at the close of the trial, Smith requested that the tapes be forwarded to the jury during their deliberations. Smith contends that consideration of the tapes would have affected the jury's view of the credibility of the witnesses. Specifically, Smith argues that the tapes present a portrait of her supervisor that was different from the one presented at trial.

The magistrate judge refused to forward the tapes to the jury because most of the transcripts of these tape-recorded conversations had not been admitted into evidence and, moreover, the tapes had not been played before the jury. As the appellee's brief points out, the jury would almost certainly have been confused if the judge had allowed these tapes to go the jury room "with no means for the jury to play them, with no explanation of what they were or how they were prepared, or even who the voices were on the tape." Under these circumstances, the magistrate judge did not abuse his discretion by deciding not to send the tapes to the jury room. Smith's fourth issue is also without merit.

IV

For the reasons set forth above, the partial summary judgment on three of Smith's retaliation claims and the jury verdict on her fourth retaliation claim are both

11

A F F I R M E D.