**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 20, 2011

No. 10-50678

Lyle W. Cayce
Clerk

JOANNA MCGLOTHIN NAVARRO, Individually and on behalf of The Estate of Ricardo Navarro, deceased; CHRIS NAVARRO, and All Beneficiaries Entitled to Recover Under the Texas Wrongful Death Act for the Death of Ricardo Navarro, Deceased; ALAN NAVARRO, and All Beneficiaries Entitled to Recover Under the Texas Wrongful Death Act for the Death of Ricardo Navarro, Deceased,

Plaintiffs - Appellants

v.

SOARING HELMET CORP.,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:06-CV-1004

Before REAVLEY, GARZA, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

The Estate and the wrongful death beneficiaries of Ricardo Navarro brought a design defect suit against Soaring Helmet Corporation. The defendant was the distributor of a helmet that Navarro was wearing when he fell off his

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50678

motorcycle and died.  A jury returned a defense verdict.  The argument on appeal is that the district judge erroneously excluded expert testimony and evidence of alternative helmet designs.  We AFFIRM.

FACTUAL AND PROCEDURAL HISTORY

On May 30, 2005, Ricardo Navarro was riding a motorcycle near Fredericksburg, Texas.  He lost control, fell, and tumbled on the pavement. He suffered injuries to his head and chest, and he died at the scene.  At the time of the accident, Navarro was wearing the Vega Summit XPV full-face helmet distributed by Soaring Helmet Corp.

In December 2006, the Navarro family filed suit against Soaring Helmet in the United States District Court for the Western District of Texas, alleging various products liability claims, including design defect, manufacturing defect, and marketing defect, as well as negligence and gross negligence claims.  The family argued that Navarro suffered a fatal basilar skull fracture because of the improper design of the Vega Summit XPV helmet.  That is, the helmet appeared to offer full-face protection because it had a full-face outer shell, but actually provided only a half-shell inner liner.  The defendant claimed that Navarro's death was not caused by any possible defects in the helmet but was the result of an injury to his chest.

In 2008, the district court granted summary judgment in favor of Soaring Helmet based on a finding that there was no evidence that Navarro's death was the result of a head injury.  We reversed and remanded after determining that there was "evidence cumulatively sufficient to support a finding that Navarro died from a head injury and not a chest injury." *Navarro v. Soaring Helmet Corp.*, 321 F. App'x 340, 341 (5th Cir. 2009) (unpublished).

At trial after our remand, Navarro's family wanted to introduce "evidence of other full-face motorcycle helmets that, unlike [the Vega Summit XPV], contained energy-absorbing polystyrene inner liners that protected not just the

top of the head, but extended down the sides of the helmet and into the chin bar." Prior to trial, Soaring Helmet filed a motion *in limine* seeking to prevent the admission of this evidence. Counsel for the Navarro family argued that the evidence was relevant to feasibility and unreasonable dangerousness. The district judge expressed concern that if the plaintiff presented evidence on other helmets to show that the Vega Summit XPV was unusually light on padding, and the defendant countered with evidence of yet more helmets that were similar to the one Navarro had worn, the trial would be consumed by an issue the district judge found to be irrelevant. "What's relevant is the design and the only relevance [of] any other helmet is to show that it was feasible" to make a helmet with more protection. "So if you think you've got something as you proceed, approach the bench, counsel, but not as an outlier."

On the morning of the third day of trial, the admissibility of evidence of other helmets was addressed one last time. The district judge stated that "if we have 150 motorcycle helmets brought in with all sorts of different designs, . . . it really doesn't make any difference. . . . The relevancy is, was this helmet unreasonably dangerous?" The defendant's attorney stated that the plaintiff's expert had not tested any of the other helmets he wanted to mention, though he did test the Vega Summit XPV. The plaintiff's attorney wanted the expert to be allowed to testify that helmets with the claimed better design were available, and were economically and technologically feasible. The expert, Dr. Richard Stalnaker, was then subjected to voir dire. He indicated that he wanted to mention one other helmet – the Laser. It was similar in price to the Vega Summit XPV, and contained the padding that the expert would state was the better design.

After the voir dire, the district judge ruled that while evidence of other helmets was not relevant to the question of unreasonable dangerousness, he would permit the expert witness for Navarro's family to "testify that he found a

No. 10-50678

helmet that had the difference" in the levels of protection. The district judge also said he expected the expert would be cross-examined and would admit that there were other available helmets that did not have the extra padding.

At the close of trial, the jury was presented with a verdict form containing an initial question on liability. It asked:

> Was there a design defect in the Vega Summit XPV helmet at the time it left the possession of Soaring Helmet that was a producing cause of Richard Navarro's death?

The instructions defined "design defect" as

> a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. For a design defect to exist there must have been a "safer alternative design."

The jury answered the initial question, "No," resulting in a defense verdict. The district judge denied a motion for new trial. A timely appeal followed.

## DISCUSSION

The Navarro family seek reversal based on the district judge's exclusion of the following evidence: (1) alternative helmets were available, and (2) expert opinion that the helmet was deceptive and an outlier.

We review evidentiary decisions for an abuse of discretion. *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 198-99 (5th Cir. 2006). "A trial court abuses its discretion if . . . it bases its decision on an error of law." *Id.* at 198-99 (quotation marks and citation omitted). Upon finding an abuse of discretion, this court reviews for harmless error, upsetting the verdict only where the error affected the substantial rights of the complaining party. *Id.* at 199; Fed. R. Civ. P. 61.

*I. Exclusion of evidence of alternative helmet designs*

Navarro's family argues the district judge abused his discretion when he excluded evidence of alternative helmet designs, because such evidence was relevant to the reasonableness of the design of the Vega Summit XPV.

No. 10-50678

Products liability claims in Texas are governed by Chapter 82 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code §§ 82.001-008. The section applying to design defects establishes these requirements:

> (a) In a products liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that:
>> (1) there was a safer alternative design; and
>> (2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.
>
> (b) In this section, "safer alternative design" means a product design other than the one actually used that in reasonable probability:
>> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and
>> (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

*Id*. § 82.005(a)-(b).

Beyond presenting evidence on these two elements, a plaintiff must also offer evidence that "the product was defectively designed so as to render it unreasonably dangerous." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). Texas courts consider the defective design issue using a "risk-utility analysis" that involves consideration of multiple factors, including "the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive . . . ." *Id.*[1]

---

[1] The entire list of risk-utility factors is this:
(1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public

No. 10-50678

In this case, the district judge conditionally excluded evidence of alternative helmet designs because the evidence would not "have anything to do with whether [the Vega Summit XPV] is unreasonably dangerous." The district judge, however, eventually concluded that the expert witness for Navarro's family, Dr. Stalnaker, could "testify that he found a helmet that had the difference" in the levels of protection. During the voir dire, the expert testified that the Laser helmet was comparable in price. His voir dire testimony also implied that the alternative was not unreasonably dangerous.

Consequently, the district judge's ruling, though not premised upon permitting the introduction of evidence to establish unreasonable dangerousness, allowed the expert to present the testimony that would have shown the availability of the alternative design that he opined was better.

The district judge also ruled that related evidence could not be offered, such as photographs of other helmets. Controlling how much evidence is offered on relevant factual issues is a matter within the district court's discretion; the district court is entitled to determine that certain evidence is cumulative or its introduction would cause undue delay. Fed. R. Evid. 403. The district judge was concerned that if the trial started down the road of evidentiary presentations on the large number of other available helmets that were similar or dissimilar to the Vega Summit XPV, the jurors would receive much confusing evidence. That ruling was not an abuse of discretion.

We conclude the district judge did not improperly restrict the Navarro family's efforts to establish that an alternative design existed that was not unreasonably dangerous, would have provided the protection the expert testified Navarro needed, and was comparable in price.

---

knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer. *Timpte*, 286 S.W.3d at 311 (citation omitted).

## II. Exclusion of expert testimony

A different factual issue at trial was whether the Vega Summit XPV was "deceptive," "misleading," and an "outlier." The Navarro family argues that the district judge abused his discretion when he would not allow Dr. Stalnaker to testify that consumers would find the helmet to be deceptive.

The party seeking to introduce expert testimony has the burden to "prove by a preponderance of the evidence that the testimony is reliable." *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001) (quotation marks and citation omitted). An expert witness may provide opinion testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

Dr. Stalnaker was subject to voir dire immediately prior to testifying before the jury. Almost the entirety of the voir dire dealt with his opinion that an additional liner in the helmet would have saved Navarro's life. Very little attention was given to the expert's opinion as to whether the helmet was deceptive in appearance. Only two questions were asked on this point. Dr. Stalnaker stated he had not conducted any surveys to determine whether consumers would find the Vega Summit XPV to be misleading in the degree of protection that it provided. Instead, his opinion arose simply from the fact that because the helmet covered the entire head, consumers would believe it provided protection for the entire head. The district judge ruled that Dr. Stalnaker could not testify that consumers would be deceived by the helmet's appearance.

The expectation of ordinary consumers is a relevant factor in the risk-utility analysis. *See Timpte*, 286 S.W.3d at 311. In the presentation of this argument in its appellate brief, the Navarro family cites one of our precedents as its sole authority. *See Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 348 (5th Cir. 1983). *Carter* determined that evidence of industry custom was relevant to

proving an ordinary consumer's expectations as to a product. *Id.* Our issue is different, namely, whether this expert had any basis on which to support his opinion. We agree with the district judge that in what little time was spent during voir dire on whether the helmet was misleading to consumers, no adequate basis was offered that Dr. Stalnaker had the expertise to provide a better opinion about what consumers would expect than would jurors themselves.

AFFIRMED.