Debra DAVIDSON, Plaintiff-Appellant,

v.

STANADYNE, INC., Defendant-Appellee.

No. 82–1276.

United States Court of Appeals,
Fifth Circuit.

Nov. 7, 1983.

Bean, Francis & Wills, Robert Bean, Dallas, Tex., for plaintiff-appellant.

Shannon, Gracey, Ratliff & Miller, C. Victor Anderson, Jr., David L. Hammett, David Keltner, Fort Worth, Tex., for defendant-appellee.

Before GARZA, RANDALL and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

In this Texas diversity case Debra Davidson ("Davidson"), plaintiff-appellant, appeals from a summary judgment rendered against her in her products liability action against Stanadyne, Inc. ("Stanadyne"), defendant-appellee. She claims damages from Stanadyne for severe burns she suffered in her bathtub and shower allegedly caused by the defective design of Stanadyne's single-control bath and shower faucet. We reverse the granting of summary judgment and remand the case to the district court for further proceedings.

I.

The primary facts of this case are for the most part not in dispute. The shower in Davidson's apartment was equipped with a single-control bath/shower faucet designed and manufactured by Stanadyne. Faucets of its design have been used widely in this country and abroad.[1] With a single-control faucet, water flow is adjusted by pulling or pushing the control knob. Pulling increases the flow pressure and pushing decreases it. Water temperature is adjusted by turning the control knob to the left for hot and to the right for cold. The turning span of the knob between the full hot and full cold positions is 180 degrees.

On July 9, 1980 Davidson stepped into the bathtub and shower in her apartment and adjusted the volume and water temperature to her satisfaction with the control knob while letting the water run through the bathtub faucet. She then pulled up the small valve used to divert the water to the shower head. At this point she was standing with her back to the water and had begun to shampoo her hair when she apparently suffered an epileptic seizure. Davidson's next recollection is awakening one to two hours later in a tub full of very hot water. In her deposition she testified that "I think while I was having the seizure with my body thrashing around that the water

---

1. An affidavit of its "Reliability Assurance Manager" submitted by Stanadyne in support of its motion for summary judgment describes the development of the use of its single-control faucet design as follows:

"The shower valve was originally introduced to the market in August of 1959. This was the original 'push/pull' concept in single control valves and is the same as we continue to market today. Since the August 1959 beginning, we have shipped approximately 12,783,500 valves for tub and/or shower applications. The push/pull concept has been enormously successful and has been copied by other manufacturers in the United States and was adopted in Europe as early as 1962. It has also been adopted in Japan and is in great demand throughout the world. With

regard to the domestic market, the product is sold in the building trades through plumbing product wholesalers specified by architects, plumbing contractors, builders, and is purchased by the Consolidated Supply Division of the Department of Housing and Urban Development and is installed in public housing throughout the United States. This type of shower valve which is manufactured by the Defendant, is also especially popular in major hotel and motel chains. Hyatt, Del Webb Properties, Travel Lodge, Motel 6, Holiday Inn, Howard Johnson, Days Inn, and many others use this same shower valve. This type of shower valve is also one of the most preferred selections for residential apartment complexes both in the investment properties as well as in the condominium sector."

got turned up higher."[2] Davidson suffered extremely serious burns over most of her body, which have required months of hospitalization and therapy.

Davidson brought suit against Stanadyne in district court alleging that its faucet was "defective and unreasonably dangerous in that it was designed and constructed in such a way as to allow inadvertent flow of full hot water." She also alleged that Stanadyne had been negligent and had breached an implied warranty that the faucet was "safe and suitable for the purpose of controlling water flow and temperature in a residential shower." She sought a total of $1,877,000 in damages.

Stanadyne moved for summary judgment on the grounds that there was no genuine issue as to any material fact and that there was no design defect, breach of warranty or negligence on its part as a matter of law. It also urged that the affirmative defense of misuse was present as a matter of law.

In response Davidson argued that the question of whether the single-control faucet was unreasonably dangerous was one for the jury. She alleged that "[a] rotation of less than seventy degrees to the faucet control will completely cut off all flow of cold water and allow full flow of hot water. Therefore a glancing blow to the control can easily allow a flow of hot water."[3] She also argued that a safety device known as a "scald guard," which is marketed by the defendant and other manufacturers, would have prevented her injuries and that evidence that a manufacturer presently designs a safer product "furnishes an inference that a safer design was feasible and that the existing design is defective."[4] She presented an affidavit from a manufacturer's representative that such "scald guards" were marketed as a part of single-control tub and shower faucets, that with such devices "the faucet cannot be inadvertently turned to a scalding hot setting," and that single-control faucets comparable to Stanadyne's and without a "scald guard" were usually priced in a $25-to-$30 range, while those with "scald guards" were $5 to $6 higher.

The district court granted Stanadyne's motion for summary judgment.[5] It found that "[t]he producing cause of Plaintiff's injuries was her accidentally striking the faucet and thereby turning it to the full hot position." The court held, however, that "[t]he fact that the faucet may be turned to the full hot position by a body striking it, does not make the faucet an unreasonably dangerous product." Nor, the court held, was it made so by the lack of a "scald guard" which would have prevented plaintiff's injury. The district court concluded that the "product was not defective in its design." It did not consider the plaintiff's breach of warranty or negligence claims or Stanadyne's contention that the facts of this case demonstrated the defense of "misuse" as a matter of law.

## II.

The principles governing recovery in a products liability case alleging defective de-

2. Davidson also testified in her deposition that after she got out of the shower she noticed the water "running a little bit" from the bathtub faucet. She does not give her opinion, however, on how the water, once it was "turned up higher," was turned off so that it was only "running a little bit" from the bathtub faucet.

3. Davidson also asserts that "[i]n faucets with separate controls for hot and cold water [such an effect] is not possible, as the accidental movement to the hot water control will not cut off the flow of compensating cold water and is therefore a much safer design." We note, however, that an accidental blow to the cold water control, a possibility ignored by Davidson, can also result in a flow of full hot water in a two-control faucet.

4. A "scald guard" on a single-control faucet is a device which limits the movement of the control knob toward hot to prevent the inadvertent flow of too much hot water. It is equipped with a manual override button which, when pushed in, allows the control to be turned to the full hot position, if desired.

5. In considering this motion the district court had before it the pleadings, Davidson's response to written interrogatories, Davidson's oral deposition, one affidavit from each party (the affidavit from the defendant Stanadyne's employee, and that of the manufacturer's representative submitted by plaintiff), and the parties' trial briefs for and against the motion.

sign under Texas law have been recently summarized in *Kindred v. Con/Chem, Inc.*, 644 S.W.2d 828 (Tex.App.—Corpus Christi 1982), *rev'd on other grounds*, 650 S.W.2d 61 (Tex.1983):

"As established in [*Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979)], the predicate for recovery in a defective design case is a showing that the product was defective, that the defect made the product unreasonably dangerous and that the defect was a producing cause of injuries . . . .

"To prove that there is a defect in design which is unreasonably dangerous, a plaintiff must show that the likelihood and gravity of injury from its use exceeds its utility. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 746 (Tex.1980). In making their decision, the jury may consider evidence of the economic and scientific feasibility of alternative designs, the usefulness and desirability of the product, the ability to eliminate the risk without seriously [de]creasing the product's usefulness or [increasing its] cost." *Id.* at 830–31.

■ As we recently pointed out in *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344 at 347 (5th Cir.1983), since *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979), in strict liability products cases Texas has followed the rule that the ultimate test for defective design is whether the product is "unreasonably" dangerous in the sense that "the danger-in-fact associated with the use of the product outweighs the utility of the product." Although ordinary consumer expectations may be relevant in making this determination, such expectations do not of themselves constitute the ultimate standard. *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344 at 347. We note that Texas has held that a relatively obvious and/or common lack of a simple safety device in an ordinary product may be found by the jury to constitute a design defect. *See, e.g., Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867 (Tex.1978) (absence of adhesive or antiskid material on tractor step); *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1976) (absence of cleats on scaffold boards). *See also Bailey v. Boatland of Houston, Inc.*, 585 S.W.2d 805 (Tex.Civ.App.—Houston [1st Dist.] 1979), *rev'd on other grounds*, 609 S.W.2d 743 (Tex.1980) (absence of "kill switch" to cut off outboard motor when operator falls out of boat). Expert testimony is admissible on the issue of whether the particular design is "unreasonably dangerous." *Gonzales*, 571 S.W.2d at 871; *Rourke*, 530 S.W.2d at 799. Merely because the need for the safety device would not arise when the product was used in its intended manner, does not necessarily mean that the absence of the safety device cannot render the product unreasonably dangerous. *Foster v. Ford Motor Co.*, 616 F.2d 1304, 1310 (5th Cir.1980).

■ Rule 56(c) of the Federal Rules of Civil Procedure states that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As this Court has noted many times, however, the use of summary judgment is rarely appropriate in negligence or products liability cases, even where the material facts are not disputed.[6] *Marsden v. Patane*, 380 F.2d 489, 491 (5th Cir.1967); *Gross v. Southern Railway Co.*, 414 F.2d 292, 296 (5th Cir. 1969); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir.1970); *King v. Avtech Aviation, Inc.*, 655 F.2d 77, 78 (5th Cir.1981).

---

**6.** Some courts have expressed the rule in even stronger terms:

"Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a mo-

tion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented." *Hughes v. American Jawa, Ltd.*, 529 F.2d 21, 25 (8th Cir.1976) (quoting *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.), *cert. denied*, 342 U.S. 887, 72 S.Ct. 177, 96 L.Ed. 665 (1951)).

*See also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2729 at 195 (1983).

■ One rationale for this rule, as applied to negligence cases, was stated in *Gauk v. Meleski,* 346 F.2d 433 (5th Cir.1965), as follows:

> "Because of the peculiarly elusive nature of the term 'negligence' and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed." *Id.* at 437.

This reasoning is equally applicable in the case before us because in a Texas products liability action for defective design the trier of fact is called upon to decide whether a product's design is "unreasonably dangerous" in light of several factors. As the Texas Supreme Court stated in *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 745–46 (Tex.1980), "Whether a product was defectively designed requires a *balancing by the jury* of its utility against the likelihood of and gravity of injury from its use. The jury may consider *many factors* before deciding whether a product's usefulness or desirability are outweighed by its risks. Their finding on defectiveness may be influenced by evidence of a safer design that would have prevented the injury." (Emphasis added.)[7] Rare circumstances do exist, however, when the court's making such determinations on summary judgment is appropriate.[8] *See Marsden v. Patane, supra;* 10A Wright, § 2729 at 197–201, 212–17.

■ As this is not such a case, we must vacate the district court's judgment and remand. Although the historical, primary facts of this case do not appear to be in dispute, neither have they been developed to any significant degree. As stated in *Palmer v. Chamberlin,* 191 F.2d 532 (5th Cir.1951):

> "Where ... the decision of a question of law by the Court depends upon an inquiry into the surrounding facts and circumstances, the Court should refuse to grant a motion for a summary judgment until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law." *Id.* at 540.

*See also N.L.R.B. v. Smith Industries, Inc.,* 403 F.2d 889, 893 (5th Cir.1968); *Virgil v. Time, Inc.,* 527 F.2d 1122, 1131 n. 15 (9th Cir.1975), *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976); *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 211 (8th Cir.1976); *Jecies v. Matsuda,* 503 F.Supp. 580, 583 (S.D.N.Y. 1980); 10A Wright, § 2725 at 85 and § 2728 at 191.

Moreover, as 10A Wright, § 2727 at 121–25 observes:

> "It is well-settled that the party moving for summary judgment has the burden of demonstrating that the Rule. 56(c) test—'no genuine issue as to any material fact'—is satisfied and that he is entitled to judgment as a matter of law. The movant is held to a stringent standard. Before summary judgment will be granted it must be clear what the truth is and any doubt as to the existence of a genuine issue of material fact will be resolved against the movant. Because the burden is on the movant, the evidence presented to the court always is construed in favor of the party opposing the motion ...." (Footnotes omitted.)

---

**7.** Essentially the same statement was made in *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 62 (Tex.1983). Of course, the jury is not free to find that mere lack of complete perfection in design, so that less than the greatest theoretically possible safety is achieved, constitutes a design defect. *Henderson v. Ford Motor Co.,* 519 S.W.2d 87, 93 (Tex.1974).

**8.** In tort actions in which determinations of a less "elusive nature," such as the existence of an agency relationship, waiver, or whether a plaintiff is in a class protected by a statute, are dispositive, summary judgment may more often be appropriate. *See* 10A Wright, § 2729 at 197–201.

Further, it is settled that "no defense is required by Rule 56(e) if the movant fails to meet his burden of showing the absence of any genuine issue of material fact." *Id.* § 2739 at 525. *See also id.* § 2727 at 138–41 (opponent of motion has no duty to present evidence in opposition "when the matters presented fail to foreclose the possibility of a factual dispute"). Unlike the situation which the plaintiff faces when resisting a motion for directed verdict, where the motion is good, regardless of "gaps" in the defendant's evidence, unless the plaintiff *has* produced evidence raising factual questions on the issues as to which the plaintiff has the burden of proof, when the plaintiff resists a motion for summary judgment it is the defendant who has the initial burden of producing evidence showing there is no genuine issue as to any material fact, *including* factual issues as to which the plaintiff has the burden of proof at trial.

As noted above, to show that a product is defective and unreasonably dangerous under Texas law a plaintiff must show that "the likelihood and gravity of injury from its use exceeds its utility." *Kindred v. Con/Chem, Inc.,* 644 S.W.2d at 830. Several factors are relevant to this determination. "[T]he economic and scientific feasibility of alternative designs, the usefulness and desirability of the product, [and] the ability to eliminate the risk with-out seriously [de]creasing the product's usefulness or [increasing its] cost." *Id.* at 830–31. Davidson has offered evidence of the feasibility of an alternative design which would have prevented the injury, and Stanadyne has offered evidence on the usefulness and desirability of its product. The record is virtually silent, however, on the issue of the "likelihood and gravity of injury" [9] and is thin at best on the effect of the alternate design (the "scald guard") on the usefulness and cost of the Stanadyne faucet. No expert testimony was before the court that the Stanadyne faucet was, or was not, unreasonably dangerous, or what its safety history was.

The function of a motion for summary judgment is not to force a party to try the entire case to the court. As Professors Wright, Miller, and Kane note, "in that event Rule 56 no longer serves the purpose of saving the court's and litigants' time." Section 2728 at 191–92. There is nothing in the summary judgment record which is inconsistent with Davidson's being able to produce additional evidence, *not* contradictory to that before the district court, in support of her claim,[10] and we are unable to conclude that a reasonable jury could not draw conflicting inferences from all of the facts and circumstances of this case as it might be so developed and that none of those inferences would support her theories of recovery.[11]

---

**9.** Stanadyne argues that the widespread use of the single-control faucet is proof of its safety. Of course, industry practice is not conclusive. *Carter v. Massey-Ferguson, Inc., supra.* Although evidence of this kind may be *relevant* to the issue of the "likelihood and gravity of injury" from a product, the potential availability of much more probative evidence on this issue dictates against granting summary judgment this early in the development of Davidson's case. Moreover, nothing in the sole Stanadyne affidavit, which was made by its employee, speaks to safety or safety history, the presence or absence of scalding incidents, safety studies or the like, in respect to this type faucet or similar faucets. Nothing in this record suggests that the "scald guard" was not developed in an effort to cure a perceived danger resulting from numerous scalding incidents.

**10.** At oral argument Davidson complained that discovery was cut off by the motion for sum-mary judgment and that as a result she was not fully able to develop her case. We reverse the district court because we agree that its ruling on the motion for summary judgment, given the facts before it, was premature. We do not consider whether the summary judgment would have been proper had the plaintiff expressly made her *entire* case with the facts presented.

**11.** Stanadyne argues the record contains no evidence that the faucet was a cause of Davidson's injury. However, there was no evidence suggesting that it was not the cause, or suggesting any other cause. As noted, this was not a motion for directed verdict, but rather for summary judgment. The district court concluded that "[t]he producing cause of Plaintiff's injuries was her accidentally striking the faucet and thereby turning it to the full hot position." While there was no direct evidence of this,

Our holding should not be construed to suggest, however, that a directed verdict at the close of Davidson's case may not be appropriate. We do not criticize the district court for desiring to handle this litigation in an efficient manner. Restraint in the use of this procedure, however, may be necessary in cases such as this one to enable a plaintiff to fully develop her proof, especially in light of the nature of the substantive determinations required in products liability cases and the difference in the burdens which a plaintiff faces in opposing a motion for summary judgment and in opposing a motion for directed verdict.

REVERSED AND REMANDED.

circumstantial evidence can support a finding of producing cause. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d at 63. The affidavit submitted by plaintiff shows that with a "scald guard" device "the faucet cannot be inadvertently turned to a scalding hot setting." For purposes of summary judgment, at least, this means that the possibility of a factual issue as to whether the plaintiff would not have been injured had the faucet had a "scald guard" is not foreclosed. Stanadyne also seems to argue that any causal connection is too attenuated, or is broken, because plaintiff's accidentally striking the faucet was caused by her epileptic seizure. We note, however, that while the record indicates plaintiff likely suffered a seizure, it is not fully clear on the point and is even less clear that such was the cause of her striking the faucet. Moreover, in strict products liability cases "proximate" cause is not required, only "producing" cause. *General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 351 (Tex.1977). While there are doubtless *some* limits to the degree of attenuation, or the influence of other causes, *that are permissible under the concept of "producing"* cause, we do not find that this summary judgment record conclusively establishes that these limits have been transcended here. If the faucet were unreasonably dangerous because someone *might be scalded as a* result of accidentally striking it, the fact that the unintended movement which causes the striking is not the conventional kind of slip in the tub but is rather seizure-induced is not determinative on the issue of producing *cause.* The relevance of the seizure, under these facts,

goes more to the issue of whether the product is unreasonably dangerous. If it is only dangerous to those susceptible to seizures, it may not be unreasonably dangerous. *See C.A. Hoover & Son v. O.M. Franklin Serum Co.,* 444 S.W.2d 596, 598 (Tex.1969) (indicating no strict liability where consumers' adverse reaction to pure drug is "rare and unforeseeable"). Indeed, even if the danger of serious scalding were not limited to those having the propensity for seizures it might nevertheless be so remote, or so dependent on such unlikely fortuities, as to not be "unreasonably" dangerous. On this record, and in this procedural posture, however, we cannot say that Stanadyne has sustained its burden as movant for summary judgment of affirmatively so demonstrating as a matter of law.

Even assuming that misuse could be a complete defense (*but see Duncan v. Cessna Aircraft Co.,* 26 Tex.S.Ct.J. 507, (Tex. July 16, 1983)), we further hold that the record does not establish, as a matter of law, any such misuse.