Janet R. MILLER–SCHMIDT, et al., Plaintiffs–Appellants,

v.

GASTECH, INC. et al., Defendants,

The American Bureau of Shipping, Inc., Defendant–Appellee.

No. 88–3259.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1989.

Robert Winn, and Camilo K. Sales, III, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for plaintiffs-appellants.

James R. Logan, IV, New Orleans, La., and John J. Loflin and John E. Grimmer, Lord, Day & Lord, New York City, for defendant-appellee.

Before JOHNSON, DAVIS, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiff Janet Miller–Schmidt appeals from the district court's grant of summary judgment in favor of the defendant American Bureau of Shipping, Inc. (ABS). Concluding the district court's grant of ABS's motion for summary judgment was not improper, we affirm.

I. FACTS AND PROCEDURAL HISTORY

ODECO, Inc. owned and operated the OCEAN VIKING, a semi-submersible drilling rig of Panamanian registry which by late 1985, was due for a renewal of its loadline certificate. In order to renew the certificate, ODECO engaged ABS to inspect the OCEAN VIKING's structural integrity as required by the provisions of the International Loadline Convention. ABS assigned its surveyor, E.C. Nelson, to perform the requisite inspection. ODECO assigned two of its employees, Robert Schmidt, an ODECO engineer, and Jose Velasco, an ODECO safety and training specialist, to the task of making the OCEAN VIKING ready for inspection.

The inspection which began in November 1985 was on-going in nature. The procedure was such that ODECO would inform ABS when another section of the OCEAN VIKING was ready for Nelson's inspection. Schmidt and Velasco would direct Nelson

to the section of the OCEAN VIKING which had been made ready, and Velasco, as ODECO's designated "competent person"[1] would check the air quality of any closed compartments targeted for inspection. Velasco used a "Gastech" meter for that purpose—a device which could detect noxious, lethal or oxygen deficient atmospheres. It was only after Velasco and his meter pronounced a compartment's atmosphere safe that Velasco, Schmidt, and Nelson would enter the area where Nelson would conduct the inspection. The trio routinely worked together in this fashion during all phases of the OCEAN VIKING's inspection.

On December 10, 1985, Schmidt had designated port center number one ballast column as the starting point for the day's inspection. That particular column was divided into three compartments each of which was approximately thirty-eight feet high. Before entering the first compartment through its already opened hatch, Velasco, using his Gastech meter, tested the air and pronounced it safe. Schmidt then entered compartment #1 and was followed by Velasco and Nelson. The ensuing inspection proved uneventful and the trio descended to the bottom of compartment #1 where hatch to compartment #2 was located.

Unlike compartment #1, the hatch to compartment #2 was closed. After ODECO employees opened the hatch, Velasco lowered his Gastech meter into compartment #2 to assess the safety of the compartment's atmosphere. After Velasco

pronounced the atmosphere in compartment #2 safe, Schmidt descended into the compartment. While his hands were still visible on the top rung of the compartment's ladder, Schmidt uttered an unintelligible remark, lost his grip and fell. Velasco, after sending Nelson for help, likewise descended into compartment #2 in an attempt to rescue Schmidt. Overcome by the lethal atmosphere, Velasco also fell to the bottom of the compartment. Tragically, both Schmidt and Velasco lost their lives in the accident.

Schmidt's wife, Janet R. Miller–Schmidt, and his surviving children filed this wrongful death and survival action against ODECO, Gastech, Inc. and ABS, Inc. ODECO and Gastech settled prior to trial. At the close of discovery, the remaining defendant, ABS, moved for summary judgment on the ground that its employee, Nelson, owed no legal duty to Schmidt. The district court granted ABS's motion for summary judgment and dismissed Miller–Schmidt's complaint. Miller–Schmidt then moved for reconsideration of the dismissal order but the district court denied Miller–Schmidt's motion. Thereafter, Miller–Schmidt perfected this timely appeal.

## II. DISCUSSION

■ In this Circuit, a cause of action for negligence has four elements. The formula may be summarized as follows:

1. A duty, or obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the

---

1. Under the Occupational Safety and Health Administration Act, a "competent person"

> shall be designated by the employer in accordance with the applicable requirements of this section unless ... carried out by a National Fire Protection Association Certified Marine Chemist.

29 C.F.R. § 1915.7(a)(1).
Additionally, a competent person shall have the

> [c]apability to perform the tests and inspections required by Subparts B, C, D, and H of this part and to write the required logs.

29 C.F.R. § 1915.7(b)(5).
Subpart B provides in part that
> [b]efore employees are initially permitted to enter any of the ship's spaces designated in paragraphs (b)(1)(i), (ii), and (iii) of this

> section, the atmosphere in the space to be entered shall be tested for toxic atmospheric contaminants, and the space inspected for the presence of toxic or corrosive residues by a Marine Chemist, Industrial Hygienist *or other person qualified to make these tests and inspections.*

> .   .   .   .   .

> (2) If the tests indicate that the atmosphere in the space to be entered contains a concentration of toxic contaminants above the level which is immediately dangerous to life, the space shall be ventilated to reduce the concentration below the level immediately dangerous to life as defined in § 1915.152(b)(1).

29 C.F.R. § 1915.12(b)(1) & (2) (emphasis added).

protection of others against unreasonable risks.

2. A failure on the person's part to conform to the standard required—a breach of the duty.

3. A reasonably close causal connection between the conduct and the resulting injury, also known as "legal cause" or "proximate cause."

4. Actual loss or damages resulting to the interests of another.

*United States v. M/V BIG SAM*, 454 F.Supp. 1144 (E.D.La.1978), *rev'd on other grounds*, 480 F.Supp. 290 (1979). Stated another way, negligence is that "conduct which falls below the standard established by the law for the protection of others against unreasonable risk of harm." Prosser, *Law of Torts*, § 31 (5th Ed.1984) (quoting Restatement (Second) of Torts § 282).

■ There is but one issue presented by this appeal—whether ABS's surveyor Nelson was negligent in not warning Schmidt of the peril posed by the atmosphere in compartment # 2. More specifically, the question is whether Nelson had a legal duty to warn Schmidt of the possible danger in entering the closed compartment prior to a sufficient period of ventilation. Miller–Schmidt contends that because Nelson had many years of experience on ocean-going vessels and was an accomplished maritime surveyor he should have, by virtue of his superior knowledge, warned Schmidt of the potential for disaster inherent in descending into a previously sealed compartment. On the other hand, ABS argues that Velasco, as the ODECO designated "competent person," was looked to exclusively by Nelson and Schmidt as being the person responsible for ensuring the air safety of any area targeted for inspection. Thus, ABS maintains on appeal, as in the proceedings before the district court, that Nelson, as an inspector, had no legal duty to warn Schmidt of the danger. We are constrained to agree.

An examination of the undisputed facts presented by the instant case aids us in our determination of whether Nelson had a legal duty to warn Schmidt. Velasco was ODECO's safety and training specialist aboard the OCEAN VIKING. Schmidt, Velasco and Nelson had all agreed among themselves that Velasco would be responsible for ensuring air quality in dubious areas. Moreover, the procedure utilized by Schmidt, Velasco and Nelson in the inspection of the OCEAN VIKING had become routine and their respective roles were well established. Every time an inspection was to be conducted, Velasco, using the Gastech meter, would test the atmosphere of the area to be inspected. Had the the air quality of compartment # 2 not been tested by Velasco prior to Schmidt's entry, Nelson conceivably might have been negligent in failing to warn his associates of the potential for danger, even considering Schmidt and Velasco's own level of professional expertise and their particular familiarity with the OCEAN VIKING. Such was not the case, however, because the Gastech meter utilized by Velasco had indicated a benign atmosphere in compartment # 2 and accordingly Velasco had pronounced the area safe. Clearly, Schmidt and Nelson had come to rely on Velasco and his competent use of the Gastech meter; indeed, they had no reason to suspect that either Velasco or his machine would fail. It follows that Nelson's reliance on Velasco's determination that the atmosphere in compartment # 2 was safe was reasonable under the circumstances.

Nelson was an inspector; his inspection focused on the structural integrity of the semi-submersible drilling rig. He was neither a designated competent person nor was he a marine chemist proficient in the science of atmospheric analysis. Nelson admittedly did not make air safety tests, and prior to undertaking the first of many phases of the OCEAN VIKING's structural inspection, Nelson inquired as to who would be responsible for testing the air in questionable environments. More precisely, Nelson asked if a marine chemist would be available to conduct air safety analyses. He was given assurances by Schmidt himself that Velasco was that person and that Velasco was eminently qualified to perform the requisite tests. So confident was Schmidt in Velasco's ability that Schmidt said that he would precede Nelson into any

compartment tested and approved by Velasco. In fact, Schmidt consistently preceded Nelson into compartments targeted for inspection aboard the OCEAN VIKING. On these facts, we are unable to conclude that the district court erred in finding that Nelson owed no legal duty to warn Schmidt of the danger presented by the air in compartment # 2. The duty, rather, ran the other way.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Miller–Schmidt correctly states the rule in this Circuit that summary judgment is rarely appropriate in negligence cases even when the material facts are undisputed. *Davison v. Stanadyne, Inc.*, 718 F.2d 1334, 1338 (5th Cir.1983) (citations omitted). Miller–Schmidt also correctly asserts that in ruling on a motion for summary judgment, a district court is bound to refrain from deciding factual issues. *Gross v. Southern Railway Co.*, 414 F.2d 292, 297 (5th Cir.1969). The pertinent facts in the instant case, however, are uncontroverted and are recited above. The question thus remaining in this case insofar as the appropriateness of the district court's grant of summary judgment in favor of the appellees is concerned is not one of fact but one of law.

Absent legal duty, a cause of action for negligence must necessarily fail. Because we are unable to conclude that the district court erred in deciding that Nelson did not owe a legal duty to Schmidt, we affirm the grant of summary judgment in favor of the appellees. Moreover, in view of the agreement between Nelson, Schmidt and Velasco that Velasco would serve as the designated "competent person" with regard to inspections aboard the OCEAN VIKING, and the fact that Velasco had uniformly and consistently tested the air in onboard compartments successfully, we are unable to conclude that Nelson's conduct was unreasonable under the circumstances.

## III. CONCLUSION

Concluding that Nelson had no legal duty to warn Schmidt of the danger posed by compartment # 2 and that his conduct was reasonable under the circumstances, we affirm the district court's grant of summary judgment in favor of ABS.

AFFIRMED.