Albert TREVINO, Plaintiff–Appellant,

American National Insurance Company, Intervenor–Appellant,

v.

YAMAHA MOTOR CORPORATION, U.S.A., Defendant–Appellee.

No. 88–2818.

United States Court of Appeals, Fifth Circuit.

Sept. 5, 1989.

John Pichinson, Corpus Christi, Tex., for Trevino.

Frank E. Weathered, Corpus Christi, Tex., for American Nat. Ins. Co.

Sharon E. Callaway, Thomas H. Crofts, Jr., Jeffrey S. Hawkins, Groce, Locke & Hebdon, San Antonio, Tex., for defendant-appellee.

Before GOLDBERG, JOHNSON, and DUHE, Circuit Judges.

PER CURIAM:

Plaintiff Albert Trevino appeals an order entered by the district court granting summary judgment in favor of defendant Yamaha Motor Corporation, U.S.A. (Yamaha) on his products liability claim. Persuaded that, on the facts of the instant case, Yamaha was not responsible for any design defect in the product which allegedly caused injury to Trevino by virtue of the substantial modification of that product by a third party, we affirm the district court.

## I. FACTS AND PROCEDURAL HISTORY

The instant action stems from injuries which plaintiff Albert Trevino received while employed as a golf course maintenance worker. Specifically, Trevino was injured when he fell off a bridge on the golf course after his pants leg became entangled on a carriage latch extending from his golf cart/maintenance vehicle. The basic golf cart used by Trevino was designed and manufactured by defendant Yamaha. It was another company, however, Watson Distributing Company (Watson), which, after receiving delivery of the basic golf cart from Yamaha, altered the design of the golf cart by installing a chassis cover and carriage latch (hereafter referred to as "the pickup-type body") on the cart so that the vehicle would be suitable for golf course maintenance work. Watson then sold the converted golf cart/maintenance

vehicle to the employer of Trevino. Yamaha could not manufacture the golf cart itself already converted in such a fashion because of import restrictions.

Trevino brought the instant suit against Yamaha in state district court in Texas alleging that the location of the latch on the golf cart/maintenance vehicle was unreasonably dangerous, and that Yamaha had failed to warn of that danger. Trevino did not, however, file suit against Watson, the distributor of the golf cart/maintenance vehicle, even though the latch which allegedly protruded from the golf cart/maintenance vehicle causing Trevino to fall was part of the pickup-type body installed by Watson on the cart prior to its distribution. After removing the suit to federal district court on the basis of diversity jurisdiction, Yamaha filed a motion for summary judgment maintaining that the sole allegation of defect in the golf cart/maintenance vehicle raised by Trevino in his products liability claim related to the pickup-type body installed on the golf cart by Watson. Thus, Yamaha argued that, since it had not participated in any manner in designing, manufacturing, marketing, distributing, or installing the alleged defective part of the golf cart (the pickup-type body), Yamaha was not liable to Trevino and thus, summary judgment was appropriate. In response, Trevino maintained that, even though Yamaha did not install or manufacture the defective pickup-type body, Yamaha "encouraged" its distributors to accessorize and modify the basic Yamaha golf cart in such a fashion so as to promote the sale of the carts.[1]

After considering the summary judgment evidence submitted by the parties, the district court entered an order granting summary judgment in favor of Yamaha primarily on the basis that a manufacturer is generally not liable for design defects in its product resulting from the substantial modification of that product by a third party after the product has left the control of the manufacturer. Trevino now appeals the above order of the district court.

## II. DISCUSSION

As a preliminary matter, we note that the instant appeal is one from an order of the district court granting summary judgment in a products liability action. Rule 56(c) of the Federal Rules of Civil Procedure provides that a movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This Court, however, has previously stated that "the use of summary judgment is rarely appropriate in negligence or products liability cases, even where material facts are not disputed." *Davidson v. Stanadyne, Inc.,* 718 F.2d 1334, 1338 (5th Cir.1983) (footnote omitted). Nevertheless, where the resolution of the summary judgment motion turns upon legal, and not factual issues, summary judgment may be more appropriate. *Id.* at 1339 n. 8. *See also Miller–Schmidt v. Gastech, Inc.,* 864 F.2d 1181, 1185 (5th Cir.1989). In the instant appeal, the pertinent facts, as reflected by the summary judgment evidence, are undisputed. Further, the legal issue which this Court must resolve on appeal involves the propriety of imposing strict liability on a manufacturer (Yamaha) for the defective design of a product resulting from the substantial modification of that product by its distributor (Watson). Accordingly, the use of summary judgment was not inappropriate in the instant case.

Applying Texas law to the instant diversity action, it is initially noted that strict liability actions in Texas are governed by the Restatement (Second) of Torts, § 402A (1965), which was adopted by the State of Texas in *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787, 792 (Tex. 1967). Section 402A provides in pertinent part that:

One who sells any product in a defective condition unreasonably dangerous to the

---

**1.** At this juncture, American National Insurance Company, intervened in the instant action to assert its subrogation rights under the Texas Worker's Compensation Act.

user or consumer ... is subject to liability for physical harm thereby caused to the ultimate user or consumer ... if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer *without substantial change* in the condition in which it is sold.

(emphasis added). Thus, any products liability action necessitates a two-part inquiry: (1) is there a defect, and (2) if so, who is responsible for the defect. For purposes of the instant appeal, it is assumed that the pickup-type body including the latch protruding from the Yamaha golf cart which purportedly caused Trevino to fall and injure himself, was defective; therefore, our inquiry becomes upon whom to place the responsibility for the defective design of the pickup-type body.

On appeal, Yamaha maintains that, since Watson installed the pickup-type body upon the Yamaha golf cart after the golf cart left the control of Yamaha, Yamaha is relieved of any liability for the defect in its cart resulting from the subsequent modification of that cart by Watson. In response, Trevino argues that Yamaha encouraged and approved of such a modification by Watson as part of its marketing strategy to circumvent import restrictions and promote sales. In this regard, Trevino contends that Yamaha was under a duty to design its golf cart in a manner safe for reasonably foreseeable uses, including the use of that cart as a maintenance vehicle after conversion to such a vehicle by a distributor. Further, Trevino maintains that Yamaha was under a duty to warn of anticipated dangers resulting from reasonably foreseeable uses of its golf cart. On this point, Yamaha concedes that the conversion of the golf cart by Watson to a maintenance vehicle was foreseeable.

In resolving the above issue of responsibility for the defective character of the golf cart/maintenance vehicle in the instant case, we are significantly guided by a Third Circuit decision, *Verge v. Ford Motor Co.*, 581 F.2d 384 (1978), and a decision by a Texas Court of Appeals, *Elliott v. Century Chevrolet Co.*, 597 S.W.2d 563 (Tex.Civ. App.—Ft. Worth 1980, writ ref'd n.r.e.),

which adopts the rationale of the *Verge* decision. The defendant in the *Verge* case manufactured a truck chassis which was later converted to a garbage truck by a third party through the addition of a garbage compactor unit to the truck chassis. In *Verge*, the Third Circuit addressed whether the manufacturer of the truck chassis should be liable for failing to install a warning backup buzzer on the truck which, when backing up, crushed the plaintiff. The injury to the plaintiff in *Verge* might have been prevented had the plaintiff known the truck was backing up by virtue of a warning buzzer.

Reasoning that strict liability pursuant to section 402A should only be imposed where the manufacturer is responsible for the defective condition of the product, the *Verge* court concluded that the manufacturer of the bare truck chassis in that case was not strictly liable to the plaintiff. In so concluding, the Third Circuit enunciated the following three factors for consideration in determining the responsibility for a defect in a product where the finished product is the result of substantial work by more than one party. *Verge*, 581 F.2d 384. Those factors include: (1) trade custom—at what stage would the defect normally be cured; (2) relative expertise—which party is best acquainted with the design problems of the product as modified; and (3) practical considerations—which party is in the better position to remedy or warn of the defect. *Id.* at 387. Applying the above three factors, the *Verge* court reasoned that the company that converted the truck for garbage collection by installing the garbage compactor unit, and not the original manufacturer of the truck was the party who should properly be held liable to the plaintiff for injuries suffered by the plaintiff as the result of the failure to install a backup warning buzzer.

Confronted with a factual scenario similar to that in *Verge*, a Texas Court of Appeals, in *Elliott v. Century Chevrolet Co.*, adopted the *Verge* analysis. In *Elliott*, the court of appeals applied the above three factors enunciated by the Third Circuit to conclude that the defendant manu-

facturer of a truck chassis was not strictly liable to the plaintiff in that case for the failure to install a safety device designed to remedy a defect resulting from the modification by a third party of the truck chassis to a beer truck. *See also Riggins v. Ford Motor Co.*, 596 F.Supp. 1379 (E.D.La.1984) (following *Verge* ). The *Elliott* decision, as the applicable Texas law on this issue, guides our disposition of the instant appeal.

■ Accordingly, applying the principles of *Elliott* and *Verge* to the facts of the instant appeal, we, like the district court, conclude that Trevino failed to adduce sufficient summary judgment evidence to establish that Yamaha was in a position to alter the design of the pickup-type body installed on its golf cart by Watson, or to discover and warn of any defect in the design of the pickup-type body. Further, the district court correctly determined that the manufacturer of the pickup-type body added to the Yamaha golf cart, and Watson, who installed the pickup-type body and sold the converted cart, were clearly in a much better position than Yamaha to warn ultimate consumers of any defects in the golf cart/maintenance vehicle. Therefore, on the facts of the instant case, Yamaha may not be held responsible for any defect in the golf cart chassis cover and latch which was installed by Watson during the conversion of the cart to a maintenance vehicle.

Trevino, however, maintains that, notwithstanding the above, the distinguishing factor between the *Verge* and *Elliott* cases and the instant case is the fact that Yamaha *encouraged* and *approved of* the subsequent modification of its golf cart by its distributors to a maintenance vehicle of the type which purportedly caused Trevino's injury. Trevino then argues that, due to this encouragement and approval of the modification by Yamaha, Yamaha could

reasonably foresee that an intended use of its golf cart would be as a maintenance vehicle and thus, Yamaha had a duty to design its golf cart in a manner which would take into account any defects resulting from that modification.[2] In support of the above contention, Trevino submitted to the district court an affidavit from the president of Watson Distributing stating that "Yamaha was well aware that such after market accessories promoted sale of its products, and not only approved of, but also encouraged its distributors to provide such after market accessories."

■ The above evidence of encouragement by Trevino is not sufficient to impose responsibility on Yamaha in the instant case for any defect in the design of the pickup-type body which allegedly caused Trevino to fall and injure himself. Our conclusion in this regard, however, should not be interpreted to mean that encouragement by a manufacturer to its distributor to modify its product in a particular manner may never give rise to liability of the manufacturer for a defect resulting from that modification. For instance, it is entirely conceivable that a manufacturer could, in encouraging its distributor to modify its product in a certain fashion before sale, provide to its distributor specific directions and guidance for modifying the product. In such an instance, it may be that, after applying the *Verge* factors of trade custom, relative expertise, and practicality, the imposition of strict liability on the manufacturer would be considered. Nevertheless, we need not specifically address the "encouragement" issue in the instant case; the evidence of encouragement by Yamaha advanced by Trevino is, at best, skeletal.

Therefore, since we conclude that Trevino has failed to adduce sufficient evidence

---

**2.** As mentioned previously, Yamaha concedes, for purposes of the instant appeal, that the modification of its golf cart to a maintenance vehicle was a foreseeable modification. Trevino, relying on this concession, maintains that, just as a manufacturer is under a duty to design its product in a manner safe for reasonably foreseeable uses by consumers, so also does a manufacturer have a duty to design its product in a manner safe for reasonably foreseeable uses and modifications by third parties. The above contention by Trevino, however, is without merit as the policy considerations underlying the duty of a manufacturer to consumers are different than those involved when determining on whom to place liability for a defect in a modified product after a third party modifies a product for his own pecuniary gain.

establishing that Yamaha had any special expertise or that any practical considerations existed which would impose on Yamaha responsibility for the purported defective design of the pickup-type body, we affirm the order of the district court granting summary judgment in favor of Yamaha.

AFFIRMED.

GOLDBERG, Circuit Judge, concurring:

I concur in the result reached by the per curiam opinion. The emaciated state of the plaintiff's case, as shown by his pleadings and the Watson Affidavit, justifies the district court's summary judgment for Yamaha under any construction of strict liability principles in this context. Under hypothesized facts containing more muscle and fat (not necessarily obese), the legal principles involved in this diversity case may come before the Texas Supreme Court. If and when that day comes, I am confident that the Justices will grasp the nettle.