Linda C. **LADNER**, Plaintiff,

v.

**EQUIFAX CREDIT INFORMATION SERVICES, INC.**, Defendant.

Civ. A. No. 1:92–CV–161R.

United States District Court, S.D. Mississippi, S.D.

June 30, 1993.

---

Joe Sam Owen, Gulfport, MS, for plaintiff.

Henry F. Laird, Jr., Gulfport, for defendant.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This matter is before this Court on the Motion of the defendant, Equifax Credit Information Services, Inc. (hereinafter "Equifax"), for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FACTS

Equifax, a consumer reporting agency, has been engaged in the preparation, offering for sale, sale, and distribution of information on consumers, including consumer reports, through the mail to its customers located in various states throughout the United States at all pertinent times hereto. In February of 1992, Equifax distributed a consumer report that contained inaccurate information listing nonexisting debts owed by the plaintiff, Linda C. Ladner (hereinafter "Ms. Ladner"). Specifically, on February 5, 1992, and Febru-ary 7, 1992, Equifax distributed a consumer report disclosing that the plaintiff had maintained account No. 61277 with Colonial Mortgage and account No. 1404542983544 with Gayfers. The plaintiff alleges the consumer report contained this adverse information and that both accounts were inaccurate listing nonexisting debts.

The plaintiff alleges that as a result of these inaccuracies, she was denied a consumer loan from Magnolia Federal Savings Bank. However, the defendant brings to this court's attention that Ms. Ladner never actually applied for the loan; hence, she was never denied the loan.

The plaintiff claims that Equifax was "negligent in failing to follow reasonable procedures to assure the maximum accuracy of the information reported, thereby violating Section 607 of the Fair Credit Reporting Act (15 U.S.C. Section 1681e)." As a result of such negligence, Ms. Ladner, in allegedly being denied credit based on the inaccurate information, suffered "financial losses, extreme embarrassment, humiliation, and emotional distress, thereby entitling her to receive actual damages in a sum greater than $50,000 under the Section 617 of the Fair Credit Reporting Act, 15 U.S.C. 1681o." The plaintiff also seeks reasonable attorney's fees and all costs of these proceedings pursuant to the Fair Credit Reporting Act, 15 U.S.C. Section 1681o and "all other general and equitable relief as law and facts may warrant."

## DISCUSSION

This Court asserts diversity jurisdiction pursuant to 28 U.S.C. Section 1332. The plaintiff is an adult resident citizen of Harrison County, Mississippi. The defendant, Equifax, is a corporation incorporated under the laws of the State of Georgia and is licensed to do and is doing business in the State of Mississippi. Additionally, this Court has jurisdiction under the Fair Credit Reporting Act, 15 U.S.C. Section 1681p.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law. In *St. Amant v. Benoit*, 806 F.2d 1294, 1296–97 (5th Cir. 1987), the Fifth Circuit addressed the law as regards summary judgment and stated that "[t]he mere existence of a factual dispute does not by itself preclude the granting of summary judgment. '[T]he requirement is that there be no **genuine** issue of **material** fact.' *Anderson v. Liberty Lobby*, 477 U.S. [242], [248] [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986) (emphasis in original)." (citations omitted).

The Fifth Circuit has addressed when an issue is genuine.

> [A]n issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

*Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986) (footnotes omitted).

The United States Supreme Court further stated in *Liberty Lobby* that as to materiality, "[o]nly disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

The Supreme Court has noted that the standard for summary judgment mirrors the standard for a directed verdict, the main difference between the two being when they are used, as the inquiry under each is the same. See *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Barebones allegations are insufficient to withstand summary judgment because the opposing party 'must counter factual allegations by the moving party with specific, factual disputes; mere general alle-

gations are not a sufficient response.' " *Howard v. Greenwood*, 783 F.2d 1311, 1315 (5th Cir.1986) (citing *Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc.*, 695 F.2d 839, 845 (5th Cir.1983)).

The plaintiffs argues it is the duty of the Court to review the factual and legal issues in a light most favorable to the plaintiff in considering the defendant's Motion for Summary Judgment. *Dumas v. Pike County*, 642 F.Supp. 131 (S.D.Miss.1986). In doing so, the Court should consider both circumstantial and direct evidence. *Williamson v. F.W. Woolworth Co.*, 237 Miss. 141, 112 So.2d 529, 531 (1959).

■ In 1970 Congress passed the Fair Credit Reporting Act (hereinafter the "Act") for the purpose of legislating a balance between the interest of the consumer public and that of financial institutions. One service offered under the act is the evaluation of credit worthiness of a loan applicant. This is the area of concern in the present case. Pursuant to, 15 U.S.C. Section 1681(b), it is provided that:

> (b) It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in the manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

Further, 15 U.S.C. Section 1681e states:

> (a) Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of Section 1681(c) of this title and to limit the furnishing of consumer reports to the purposes listed under subsection 1681(b) of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the

uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681(b) of this title.

(b) Whenever consumer reporting agency prepares a consumer report it shall follow **reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.**

(emphasis added). It is a question of law as to whether a credit reporting agency has complied with the requirement of adopting reasonable procedures to assure maximum possible accuracy, thus the decision by the court may be decided upon motion for summary judgment.

■ It is not a question as to whether or not the credit report is accurate, but merely that the defendant credit reporting agency complied with the guidelines set forth in 15 U.S.C. Section 1681, et seq., as to prevent inaccurate credit reports. In the case of *Thompson v. San Antonio Retail Merchants Assn.,* 682 F.2d 509 (5th Cir.1982), the court held that "[s]ection 1681e(b) does not impose strict liability for any inaccurate credit report, but only a duty of reasonable care in preparation of the report." Therefore, since there is no imposition of strict liability for inaccuracy or incompleteness of a credit report under the Fair Credit Reporting Act, the issue before this Court is restricted to whether or not Equifax followed "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" pursuant to 15 U.S.C. Section 1681e(b). A reporting agency is liable for damages only if it has breached its duty to follow reasonable procedures to assure maximum possible accuracy of the information it reports. *Austin v. Bankamerica Service Corp.,* 419 F.Supp. 730, 732–33 (N.D.Ga.1974); *Bryant v. T.R.W., Inc.,* 689 F.2d 72–79 (6th Cir.1982).

Equifax admits to circulating a credit report on the plaintiff; however, Equifax asserts that its report was substantially accurate and that the "defendant complied with the Fair Credit Reporting Act, specifically, in that it maintained and executed reasonable procedures to assure maximum possible accuracy of the credit report in question and that it performed a reasonable and prompt reinvestigation into the alleged inaccuracies about which the plaintiff complained; and that the credit report was published in good faith pursuant to a duty to so report and was therefore privileged." Therefore, the defendant argues that there are no genuine issues of material fact thus, summary judgment should be granted in favor of the defendant as a matter of law.

Attached to the defendant's Motion for Summary Judgment is the affidavit and deposition of Mr. Lee Lovvorn (hereinafter "Mr. Lovvorn"), the director of individual customer service for Equifax. Mr. Lovvorn is in charge of Equifax's consumer services that are offered to the consuming public. Mr. Lovvorn's deposition confirms the outlined procedures allegedly taken by Equifax in preparing the plaintiff's credit report. Additionally Mr. Lovvorn stated in his deposition that, "[w]e have verified that account did not belong to Linda C. Ladner." (Lovvorn depo., at 7, 9–10). And in reference to the Gayfers account, Mr. Lovvorn further stated, "[a]nd the other Gayfers account does indeed belong to another Linda Ladner." (Lovvorn depo., at 10).

The Honorable United States District Court Judge Walter Gex held in *Watson v. Credit Bureau, Inc.,* 660 F.Supp. 48, 50 (S.D.Miss.1986), the defendant was entitled to summary judgment since, as a matter of law, it maintained the reasonable procedures to assure maximum possible accuracy set forth in 15 U.S.C. Section 1681e. The defendant in *Watson* filed an affidavit, similar to Mr. Lovvorn's filed in the present case, in support of its Motion for Summary Judgment.

■ The plaintiff's complaint was entered to the defendant on February 5, 1992. As a result of the plaintiff's complaint, the defendant contacted both Colonial Mortgage and Gayfers Department, both of whom could not confirm nor deny that the specific accounts

belonged to the plaintiff. Subsequently, the Colonial Mortgage account was deleted from the credit history of the plaintiff between February 5 and February 19, 1993, and the Gayfers history was deleted on or about March 1, 1993. The alleged offending credit history was in effect for such a short period of time and in fact was amended; therefore, this court finds Equifax was in complete compliance with the Fair Credit Reporting Act.

The plaintiff asserts there is a genuine issue of material fact as to whether the inaccurate credit report prepared by Equifax and then transmitted to Magnolia Federal Bank caused Ladner to reasonably abort her January 28, 1992, attempt to obtain a refinancing mortgage loan at Magnolia Bank; thus, summary judgment should be barred. The defendant claims that it receives credit histories by information acquired, such as full names, current addresses, and social security numbers. In response, the plaintiff argues that if "the defendant Equifax had compared *any one* of these three indicators when producing Linda C. Ladner's credit report, the two poor credit history items belonging to Linda M. Ladner residing at Whitman Road in Pass Christian, Mississippi, *would not* have been included in the credit report prepared by Equifax for Magnolia Federal Bank on Linda C. Ladner. This Court holds the issues can be decided by this Court based upon the record.

The defendant asserts the plaintiff was never actually denied a loan. Instead, she was told by a loan processor at Magnolia Federal Bank for Savings that parts of her credit history were less favorable, and there was a possibility the loan committee may not approve any loan. After her conversation with the loan processor, the plaintiff did not apply for a loan but instead left the bank, telephoned Equifax to report the alleged incorrect credit history, and allegedly never returned to the bank.

Mrs. Ladner, in her deposition, described what occurred on January 28, 1992, when she went to Magnolia Federal to acquire a loan.
"A. In the middle of filling out the loan application, she pulled it in off this credit report.

"Q. And what did she say.
"A. She come back with the paperwork, laid it on the table, and said that I could— she could take my money for credit report, but there is no way that the loan committee would approve my loan with the credit that was on that sheet."

Ms. Donna Sumrall, the Magnolia Federal employee who was taking Ms. Ladner's loan application, stated in her deposition the following:
I went and pulled the credit report. Okay, at that point I came back into my office. I had to leave my office. I came back in and I started telling her that there were things on her credit report like late payments and things like that, and it looked like there was a possibility that our loan committee would not approve her loan because, you know, she had several late payments. It was not my decision as to whether or not she could get the loan but just based on experience I knew that there was that possibility. And that it was a strong probability because she had several, several entries with late payments.

Ms. Sumrall went on to say in her deposition:
But at that time, when we started applications, she would have to pay $300 in fees up front. That was our standard fee. We had to collect for an appraisal on her house and then to run a full credit report on her. And I told her I could do it but if the loan was not approved she would forfeit that $300. I would not be able to refund that to her so she decided not to apply. And that's when she left.

The plaintiff argues there are issues for a jury to determine thus, resolution of this case by summary judgment is in fact premature and under case law principles is prohibited. "Issues of negligence should not usually be decided by summary judgment. *Kelly v. Illinois C.R. Co.,* 464 F.2d 446, 447 (5th Cir. 1972)." Further,
Summary judgment is rarely appropriate in negligence cases, even if the material facts are not in dispute. *Trevino v. Yamaha Motor Corp.,* 882 F.2d 182, 184 (5th Cir.1989); *Miller–Schmidt v. Gastech, Inc.,* 864 F.2d 1181, 1185 (5th Cir.1989); *Davidson v. Stanadyne, Inc.,* 718 F.2d

**432**

1334, 1338 (5th Cir.1983). An inherently normative issue ... is not generally susceptible to summary judgment....

*Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir.1991).

On the issue of negligence, this Court looked to 15 U.S.C. Section 1681h(e) which provides:

(e) Except as provided in sections 1681n and 1681o of this title, **no consumer may bring any action** or proceeding in the nature of defamation, invasion of privacy, or **negligence with respect to the consumer reporting agency,** any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title **except as to false information furnished with malice or willful intent to injure such consumer.** (emphasis added)

Clearly there does not exist any evidence of malicious or willful intent on the part of Equifax. *See also, Watson v. Credit Bureau, Inc.*, 660 F.Supp. 48, 50 (S.D.Miss.1986).

In conclusion, there was, in fact, no actual economic damage sustained by the plaintiff since she was never deprived of a loan. Further, the plaintiff never attempted to mitigate her situation once she notified Equifax of the inaccuracies. Once Equifax was notified they promptly amended the credit report. Furthermore, there is no evidence before this Court as to why Ms. Ladner did not attempt to acquire a loan once the report had been amended nor what the results were if she did attempt to acquire a loan after bringing the inaccuracies to the defendant's attention. Equifax complied with the guidelines set forth in 15 U.S.C. Section 1681 et seq., thus, summary judgment shall be granted as a matter of law.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion of the defendant, Equifax, for Summary Judgment pursuant to Rule 56 of the Civil Rules of Civil Procedure is hereby **GRANTED.**

**SO ORDERED AND ADJUDGED.**